[Cite as *State v. Demarco*, 2017-Ohio-8530.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-P-0041** |
| DAVID A. DEMARCO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas.
Case No. 2015 CR 00381.

Judgment: Affirmed.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Kimberly Anne Valenti*, P.O. Box 1149, Hudson, OH 44236 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1} Appellant, David A. Demarco, appeals from the May 17, 2016 judgment of conviction entered by the Portage County Court of Common Pleas following a jury trial. The trial court's judgment is affirmed.

**Procedural History**

{¶2} On May 28, 2015, appellant was indicted by the Portage County Grand Jury on one count of Discharge of a Firearm on or Near a Prohibited Premises, a third-degree felony, in violation of R.C. 2923.162(A)(3). The indictment alleged appellant discharged

a firearm "upon or over a public road or highway, and the violation created a substantial risk of physical harm to any person or caused serious physical harm to property." The charge included a firearm specification under R.C. 2929.14 & R.C. 2941.145. Appellant was represented by counsel and entered a plea of not guilty.

{¶3} The trial court granted appellant's motion for a competency and sanity evaluation. A hearing was held on September 21, 2015. The parties stipulated to the report that concluded appellant was competent to stand trial and was sane at the time of the offense.

{¶4} Trial counsel filed a motion to withdraw as counsel on September 28, 2015. The trial court granted the motion and appointed new counsel to represent appellant because of his indigent status.

{¶5} Another hearing regarding appellant's competency was held on January 15, 2016. Appellant refused to undergo another competency evaluation. The trial court indicated it would proceed pursuant to the prior determination that appellant was competent to stand trial and was sane at the time of the offense.

{¶6} A jury trial was held on February 9 and February 10, 2016. On February 9, 2016, appellant stated on the record that he wished to represent himself at trial; however, he refused to sign a waiver of counsel. Appellant represented himself on the first day of trial and had stand-by counsel. Appellant elected to have counsel take an active role in his representation on the second day of trial.

{¶7} A motion for acquittal was made pursuant to Crim.R. 29 both at the close of the state's case and at the close of all the evidence. Both motions were denied by the trial court.

{¶8}  Appellant was found guilty on Count 1 and guilty of the firearm specification. The jury also found the state did prove, beyond a reasonable doubt, that appellant created a substantial risk of physical harm to any person or caused serious physical harm to property.

{¶9}  On May 16, 2016, appellant was sentenced to a term of two years in prison on Count 1 and three years in prison on the specification, to be served consecutive to each other.  Appellant received a jail time credit of 363 days.  He was also ordered to pay a fine and court costs.  Appellant was represented by counsel at his sentencing hearing.

{¶10}  On August 2, 2016, appellant filed a motion for leave to file a delayed appeal with a notice of appeal attached.  This court granted the motion on September 26, 2016.

**Trial Testimony**

{¶11}  The jury heard the following testimony at trial.

{¶12}  Ronald Ruggles testified for the state.  Ronald testified that he lives at 3321 McClintocksburg Road, located in the city of Diamond, Ohio, which is in Portage County. Ronald affirmed that McClintocksburg Road is a "regular public roadway."  He lives there with his fiancé, Samantha Reese, and his two daughters.  His daughter A.R. is 4 years old and his daughter L.R. is 2 months old.

{¶13}  On the night of May 16, 2015, Ronald was awakened by what "sounded like something was falling off a shelf in [A.R.'s] room."

{¶14}  The next morning he noticed a hole in the siding of the house that led into A.R.'s room.  When he and Samantha went into the room and pulled A.R.'s bed away from the wall, they discovered the hole went through the drywall, into the house, and into the box spring of A.R.'s bed.  They called the police.

3

{¶15} Sergeant Harry Muir testified that he is employed with the Portage County Sheriff's Office, and he is certified by the state of Ohio as a firearms instructor. He holds certifications in semi-automatic pistol, semi-automatic carbine, sub-machine gun, and shotgun.

{¶16} On May 17, 2015, he responded to the call at 3321 McClintocksburg Road with Deputy Burris. They were called for a report that a house had been shot with a bullet.

{¶17} They observed a small hole, about the size of the end of Sergeant Muir's pinky finger, in the side of the house that went through the drywall in the baseboard trim and into the box spring of A.R.'s bed. Sergeant Muir cut open the cloth padding at the bottom side of the box spring, and recovered a bullet sitting in the cotton padding inside the box spring itself. The bullet measured .38 caliber.

{¶18} Samantha Reese testified that A.R. had been sleeping right above where the bullet went through the wall.

{¶19} To determine the trajectory of the bullet, the police used the bottom rod of a metal clothes hanger. Sergeant Muir testified: "When we put the rod through the - - through the outside hole and Deputy Burris confirmed that it had gone through the inside hole; however, it was a flat trajectory, meaning that it had been shot from relatively close range and the trajectory of the bullet was flat rather than a long arch, so it was essentially a straight shot."

{¶20} Deputy Burris took a photo in the direction the rod was pointing. When he was shown that photograph, Sergeant Muir testified: "Yes, I am pictured. I'm standing beside the cruiser. * * * I had him line me up with the direction of the rod. So I had him -

4

- I had him direct me * * * where to stand, so we could show the direction of travel of the bullet."

{¶21} After the officers determined that based on the trajectory, the bullet came from an area between the victims' home and 3266 McClintocksburg Road, appellant's home, they attempted to make contact with appellant. Although they did not make contact with appellant at that time, they took a photograph from appellant's house in the direction of the victim's house. When shown the photograph, Sergeant Muir testified: "That is a photograph taken from [appellant's] driveway of me standing in the yard of the victim's house. I was standing in line with the direction of the rod coming from the bullet hole."

{¶22} Sergeant Muir testified that McClintocksburg Road is the roadway between the two residences. He described McClintocksburg Road as follows:

> It's a fairly - - it's a rural area. The houses are separated by a good distance. McClintocksburg Road is a two-lane road. It actually - - looking at this picture, McClintocksburg Road actually sits down a little bit from the level of the ground. It sits in a slight depression. But generally speaking, there's open fields on the sides of the residence. It's just - - it's a fairly open, rural area.

{¶23} Deputy Stephanie Yugovich, with the Portage County Sheriff's Department, testified that on May 17, 2015, she was called to assist Deputy Burris at 3266 McClintocksburg Road, appellant's residence.

{¶24} When she arrived, Deputy Burris was speaking with appellant in his garage. When Deputy Burris asked appellant what happened the previous night, appellant explained that his wife asked him to retrieve the mail. When he was coming back inside and noticed someone trying to break in through his back door, he retrieved his gun and fired off a couple rounds into the ground.

5

{¶25} Deputy Burris requested to see appellant's firearm, and appellant brought out a revolver. Deputy Burris asked appellant to get the casings and unused round from the previous night. Appellant brought back four casings and one unused round that had a flathead surface on it. Deputy Burris photographed the firearm and rounds. The deputies later retrieved the firearm, unused round, and shell casings.

{¶26} Appellant showed the deputies the back door where someone had attempted to break in. The deputies did not see any type of damage or tampering with the door that would indicate force was used. Appellant also took the deputies to his driveway where he explained how he fired a couple rounds from the driveway, which would have been in a north direction and into a field. Deputy Yugovich testified:

> He then walked over towards the driveway and said he fired off a couple rounds, which would have been in the north direction into a field.
>
> He then said he turned, actually pointed actually in the direction of 3321 McClintocksburg, where the round went through their house. He pointed like this (indicating) and then said no, I shot in this direction back towards the north. So originally it was northwest and then he went back to the north.

When asked whether appellant had made any indication as far as the manner he had fired the rounds, Deputy Yugovich explained:

> [He] was making the motion that [he shot] in the air this way (indicating) as he was saying he shot in the ground.
>
> * * *
>
> And then he pointed down to the ground saying it was actually in this (indicating) direction.

**{¶27}** Deputy Yugovich testified she did not notice any ground disturbance from where the bullet would have been fired into the ground. She testified appellant was calm but seemed a little confused. He kept contradicting what he was saying.

**{¶28}** Deputy Robert Burris testified that on May 17, 2015, he was dispatched to the victims' house with Sergeant Muir. His testimony was consistent with that of Sergeant Muir as set forth herein.

**{¶29}** Deputy Burris testified that when he spoke with appellant later that day, appellant stated he shot a firearm at approximately 11:00 p.m. the previous night. He had gone to retrieve the mail and found a subject in his backyard with a firearm attempting to break into his home, so he retrieved his gun and fired several shots into the ground. Appellant stated there was a second subject who was also armed at the front of his house. After he fired the shots at the back of the house, he went to the front of the house and shot several additional warning shots into the ground. Appellant could not recall what kind of weapons each subject had. After Deputy Burris asked what kind of gun appellant used, he stated it was a .38 caliber revolver.

**{¶30}** Deputy Burris testified that after Deputy Yugovich arrived, he asked appellant to recount his story. Deputy Burris' testimony was consistent with that of Deputy Yugovich as set forth herein.

**{¶31}** Deputy Burris testified the unused round produced by appellant was significant because it appeared identical to the round recovered from A.R.'s box spring mattress. Deputy Burris believed it was similar because they were both .38 specials. The color was gray or silver, and the top of the bullet was flathead. Deputy Burris testified there was no sign of forced entry or damage to the back door. Additionally, appellant

7

stated he could not recall the exact location he had shot into the ground. Deputy Burris testified that if appellant had shot several rounds into the ground, "you'd be able to see the dirt, and, you know, where it was kicked up at." However, the deputies did not locate any bullet holes or disturbances in the ground.

{¶32} Deputy Burris testified appellant took them to the north side of his property in his driveway.

> From there he pointed off to the north into a field advising that he had shot several shots in that direction.
>
> He then pointed to the northwest in the direction of the Ruggles' home and advised he had shot in that direction, which is where the bullet had hit.
>
> * * *
>
> He was always advising that he was shooting into the ground.

{¶33} Deputy Burris stated that when he asked appellant why he did not report the subjects who were at his home, appellant stated he did not know the phone number to the sheriff's office.

{¶34} Joshua Barr testified he works at the Ohio Bureau of Criminal Investigation ("BCI"), as a forensic scientist assigned to the firearm section. Mr. Barr explained that he tests firearm operability, which involves bullet and cartridge case comparisons, gunshot residue distance determination on clothing, and tool mark comparisons.

{¶35} Mr. Barr received "a Rossi .38 Special Caliber Revolver * * * one .38 caliber special caliber cartridge and unfired cartridge, and then five fired .38 special cartridge cases" from the Portage County Sheriff's Office.

{¶36} After comparing test-fired cartridges to the five fired cartridge cases, Mr. Barr determined the five fired cartridge cases were fired from the Rossi revolver. He was

8

unable to conclusively determine whether the fired bullet was fired from the revolver. However, he noted the bullet did have corresponding class characteristics, such as caliber, to the bullets fired in his test shots. Furthermore, Mr. Barr explained that the number of lands and grooves, which are cut into the barrel of a gun to impart spin when the bullet travels in flight, were consistent between the fired bullet and the test-fired bullets. He stated the lands and grooves "were all consistent, but there was not enough individual detail to say conclusively if this was or was not fired from the revolver." Mr. Barr explained the fired bullet was too damaged to make a conclusive finding. He testified that if the fired bullet had gone through siding, insulation, drywall, baseboard, and into a box spring, that could have accounted for the damage.

{¶37} On cross-examination, Mr. Barr testified he does not perform any ballistic work or trajectory analysis.

{¶38} Appellant testified on the second day of trial. Appellant testified he lives at 3266 McClintocksburg Road with his wife. He stated he is a resident of "Palmyra Township in Diamond, Ohio." On the night of May 18, 2015, at around midnight or 1:00 a.m., he heard someone attempting to open the doors at the back of his home. Appellant stated this happened on the night of May 18, 2015, not May 16, 2015, as was stated by other witnesses on the first day of trial.

{¶39} Appellant checked the back doors and saw a man with a pistol, so he went to retrieve his own gun, which was a .38 revolver. The man was gone when appellant returned. Appellant then went over to the driveway and saw two people running across the field. He fired a few rounds into the grass. There was no sound, and the bullets did not ricochet off of anything. Appellant proceeded to the front of the house and discharged

a round into the grass. Appellant then went back into his house, locked the door, and came out through the back. He discharged two more rounds into the ground after he saw someone running in the field towards McClintocksburg Road.

{¶40} Appellant explained he did not call the police after he noticed the first intruder because he thought they would "downplay it" and because it took them anywhere from 20 minutes to a half hour to arrive. Appellant testified he felt he had to act right away or that something would happen to him. Appellant testified that, contrary to the testimony of Deputy Burris, he did not remember telling the officers the reason he did not call the police when he heard the intruders was because he did not know what number to call.

{¶41} Appellant acknowledged that he had an interaction with officers of the Portage County Sheriff's Office. Appellant testified he remembered speaking to Deputy Burris in his garage. He was not completely awake, because he had a hard time going to sleep the night before due to the intruders. Appellant agreed the gun he turned over to the deputies was a .38 revolver. However, he denied the state's .38 caliber gun exhibit was his gun. Appellant claimed his gun was a gray metal gun, not one with a wood grain handle. Appellant further testified the officers came and spoke with him on May 19, 2015, rather than on May 17, 2015.

{¶42} Appellant testified that, contrary to the deputies' testimony, he did not leave his house to get the mail on the night the intruders were at his home. Appellant explained he told the deputies he went to get the mail because, at the time he heard the intruders, he was in the middle of thinking that his wife asked him to get the mail and he kept putting it off. However, he explained he did not get up intending to retrieve the mail. Appellant also explained he could not recall when he spoke to the deputies whether the intruder's

10

gun was a pistol or a rifle, but now remembered it was a pistol. Appellant further explained

that when the deputies questioned him at his home, he could not remember exactly where

he had shot the bullets into the ground. However, he could remember the general area.

**Sufficiency and Weight of the Evidence**

{¶43} Appellant assigns three errors for review. We consider the first two in a

consolidated analysis.

{¶44} Appellant's first assignment of error states:

> The State failed to present sufficient evidence to support the offense
> of Discharge of a Firearm on or Near Prohibited Premises, a violation
> of O.R.C. §2923.162, a Felony of the Third Degree (F3), with a
> specification to Count 1, a violation of O.R.C. §2923.14, and
> §2941.145, a 'Firearm Specification', and a finding that a substantial
> risk of physical harm to any person was created or serious physical
> harm to property was caused and the jury's verdicts, Appellants'
> convictions as a matter of law and/or The jury's verdicts were against
> the manifest weight of the evidence. [sic]

This assignment of error raises issues of both the sufficiency and manifest weight of the

evidence presented at trial. Appellant also raises a sufficiency argument in his second

assignment of error with regard to the denial of his Crim.R. 29 motions:

{¶45} "The trial court erred in overruling Appellants' Crim.R. 29 motions for

acquittal; as originally made and renewed." [sic]

{¶46} To determine whether a verdict is against the manifest weight of the

evidence, a reviewing court must consider the weight of the evidence, including the

credibility of the witnesses and all reasonable inferences, to determine whether the trier

of fact "'clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d

380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A

judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, at 387, quoting *Martin*, *supra*, at 175.

{¶47} We are mindful that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21 (citation omitted). "The trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record." *Id.* Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30.

{¶48} Based on the testimony elicited at trial as set forth herein we cannot say the jury lost its way in weighing the evidence. This testimony included appellant's admission he discharged a firearm in the neighborhood. The deputies testified appellant admitted that he used a firearm on the same night a bullet was shot into the victims' home. Both deputies also testified that during their interview of appellant on the day after the incident, although appellant later changed his mind, he did indicate he shot a bullet on a trajectory consistent with the suspected trajectory of the bullet fired into the victims' home. The gun appellant used to scare away intruders was consistent with the type of gun suspected to have been used to shoot a bullet into the victims' home. Although appellant offered testimony that conflicted with the testimony of other witnesses at trial, the jury was permitted to determine the credibility of the witnesses and to make reasonable inferences from the facts presented.

12

{¶49} Appellant additionally argues the state failed to produce sufficient evidence to prove beyond a reasonable doubt (1) that the firearm was discharged over a public road or highway; (2) that appellant was the person who discharged the firearm; or (3) that appellant's gun was the one discharged on the night of May 16, 2015.

{¶50} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." *See also State v. Hall*, 11th Dist. Trumbull No. 2011-T-0115, 2012-Ohio-4336, ¶7. When reviewing whether sufficient evidence was presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶14 (citation omitted).

{¶51} Appellant was convicted of Discharge of a Firearm on or Near a Prohibited Premises, a third-degree felony, in violation of R.C. 2923.162(A)(3), which states: "(A) No person shall do any of the following * * * (3) Discharge a firearm upon or over a public road or highway." The jury also found appellant guilty of the firearm specification pursuant to R.C. 2941.145(A), which states:

> Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a

13

firearm on or about the offender's person or under the offender's control while committing the offense and * * * used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information[.]

{¶52} The jury further found the state did prove, beyond a reasonable doubt, that appellant created a substantial risk of physical harm to persons or property pursuant to R.C. 2923.16(C)(2), which states: "(C) * * * A violation of division (A)(3) of this section shall be punished as follows: * * * (2) * * * [I]f the violation created a substantial risk of physical harm to any person or caused serious physical harm to property, a violation of division (A)(3) of this section is a felony of the third degree."

{¶53} The state presented evidence upon which a juror could rationally conclude that appellant discharged a firearm over a public roadway or highway, and created a substantial risk of physical harm to a person or caused serious physical harm to property. Ronald Ruggles testified he lives on McClintocksburg Road, and that it is a "regular public roadway." This testimony was admitted without objection. The status of this road as a public highway does not appear to have been disputed in any way.

{¶54} Furthermore, if the verdict is not against the manifest weight of the evidence, the sufficiency argument does not have merit. *State v. Honzu*, 11th Dist. Trumbull No. 2016-T-0056, 2017-Ohio-626, ¶27-28, quoting *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 & 2014-L-042, 2014-Ohio-5615 ("'A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence.'"), citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32.

{¶55} Appellant's first and second assignments of error are without merit.

**Sentencing**

14

{¶56} Appellant's third assignment of error pertains to the trial court's sentencing entry. The assignment of error states:

{¶57} "The trial court erred as a matter of law when imposing sentence upon Mr. DeMarco, and, as the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." [sic]

{¶58} Appellant argues the trial court failed to properly consider R.C. 2929.11 and R.C. 2929.12 when it imposed his sentence and maintains the record does not support the trial court's findings and appellant's sentence.

{¶59} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2), which states, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *See State v. Marcum*, 146 Ohio St.3d 156, 2016-Ohio-1002, ¶1, ¶22, citing R.C. 2953.08(G)(2).

{¶60} A court imposing a felony sentence is required to consider the seriousness and recidivism factors found in R.C. 2929.12 to ensure the sentence complies with the overriding principles of felony sentencing provided in R.C. 2929.11. *See* R.C. 2929.12(A). The trial court, however, "is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12).'" *State v. Webb*, 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000); *see also State v. O'Neil*, 11th Dist. Portage No. 2010-P-0041, 2011-Ohio-2202, ¶34. "[T]he defendant has the burden to affirmatively show that the court did not consider

the applicable sentencing criteria or that the sentence imposed is 'strikingly inconsistent' with the applicable sentencing factors." *State v. Hull*, 11th Dist. Lake No. 2016-L-035, 2017-Ohio-157, ¶18.

{¶61} Appellant faced a possible prison term of 9 to 36 months for the underlying offense to run consecutive to a mandatory three-year prison term for the firearm specification. *See* R.C. 2929.14(A)(3)(b); R.C. 2929.14(C)(1)(a); and R.C. 2929.14(B)(1)(a)(ii). Appellant was sentenced to a term of imprisonment for two years for Discharge of a Firearm on or Near a Prohibited Premises, in violation of R.C. 2923.162(A)(3), to run consecutive to his three year sentence for the firearm specification pursuant to R.C. 2941.145(A) and R.C. 2929.14(B)(1)(a)(ii).

{¶62} At his sentencing hearing, the trial court heard from the state, appellant's attorney, and appellant. The trial court also stated it read a letter from the victims' family and letters from appellant's family. On the record at the sentencing hearing, the court stated: "[Y]ou almost killed a child with this gun that you shot across the road. * * * In weighing all the factors * * * it is clear a prison term is warranted."

{¶63} In the judgment entry of sentence, the trial court stated it "considered the purpose of felony sentencing" and "the need for incapacitating the Defendant, deterring the Defendant and others from future crime, rehabilitating the Defendant, making restitution to the victim of the offense, the public or both." The trial court also stated it considered the evidence presented by counsel, oral statements, any victim impact statements, the presentence investigation, and defendant's statements.

{¶64} On appeal, appellant takes issue with how the trial court balanced certain factors contained in R.C. 2929.12. Although it is apparent from the record that the trial

16

court considered the R.C. 2929.12 sentencing factors and the principles and purposes of felony sentencing under R.C. 2929.11, it did not make specific factual findings or weigh the factors against each other on the record. However, the "trial court is not required to give any particular weight or emphasis to a given set of circumstances" when considering the R.C. 2929.12 statutory factors. *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23.

{¶65} We find the record reflects the trial court properly considered R.C. 2929.11 and R.C. 2929.12 in imposing appellant's sentence.

{¶66} Appellant's third assignment of error is without merit.

{¶67} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.