[Cite as *State v. Anthony*, 2019-Ohio-5410.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-045** |
| BRYAN A. ANTHONY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000671.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel*, Assistant Prosecutor, and *Jenny B. Azouri*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa A. Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Bryan A. Anthony ("Mr. Anthony"), appeals the judgment of the Lake County Court of Common Pleas sentencing him to consecutive sentences of 11 years in prison and 180 days in jail following his guilty plea to aggravated vehicular homicide, operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI"), duties upon approaching stationary public safety vehicle displaying emergency light, and stopping after accident.

{¶2} This case has many of the elements of a Greek tragedy - a young man from a family of first responders, struggling with an addiction to drugs and alcohol, who had maintained sobriety for five years during his transition from a teen into adulthood but had just recently returned to drinking and drugging. A night of celebrating a friend's next step in becoming a police officer ended in his high school homecoming date cradling the body of her fellow police officer and his paramedic stepfather responding to the scene of a horrific crash and valiantly trying to save the life of a police officer who had been felled by his own stepson.

{¶3} Mr. Anthony raises two assignments of error. First, he argues that his sentence, consisting of maximum, consecutive sentences, is contrary to law for the following reasons:

{¶4} (1) The trial court did not consider the enumerated purpose of rehabilitation under R.C. 2929.11.

{¶5} (2) The trial court incorrectly used the victim's death as evidence under R.C. 2929.12(B)(2) to elevate the seriousness of Mr. Anthony's conduct.

{¶6} (3) The trial court's finding that the victim suffered serious physical harm under R.C. 2929.12(B)(2) is not supported by the record.

{¶7} (4) The trial court erroneously relied on the psychological harm suffered by persons other than the victim to elevate the seriousness of Mr. Anthony's conduct under R.C. 2929.12(B)(2).

{¶8} (5) The trial court erroneously found that recidivism was more likely pursuant to R.C. 2929.12(D)(2) based on Mr. Anthony's "minimal" history of criminal convictions and juvenile adjudications.

2

{¶9} (6) The trial court erred in failing to find that Mr. Anthony lived a law-abiding life for a significant number of years prior to the commission of the offenses under R.C. 2929.12(E)(3).

{¶10} (7) The trial court erroneously found that the offense was committed under circumstances likely to reoccur pursuant to R.C. 2929.12(E)(4), and thus, erroneously found that Mr. Anthony was likely to engage in future criminal activity.

{¶11} (8) The trial court erred in failing to find that Mr. Anthony demonstrated genuine remorse under R.C. 2929.12(E)(5).

{¶12} (9) The trial court's findings with respect to consecutive sentences pursuant to R.C. 2929.14(C) were contrary to law and not supported by the record.

{¶13} (10) Mr. Anthony's sentence was disproportionate to and inconsistent with similar crimes committed by similar offenders.

{¶14} Second, Mr. Anthony argues that the trial court abused its discretion in imposing his misdemeanor sentence by failing to consider the purposes of misdemeanor sentencing in R.C. 2929.21 and the sentencing factors in R.C. 2929.22.

{¶15} After a careful review of the record and pertinent law, we affirm the judgment of the Lake County Court of Common Pleas.

{¶16} In light of the Supreme Court of Ohio's recent plurality decision in *State v. Gwynne*, Slip Opinion No. 2019-Ohio-4761, we construe Mr. Anthony's first assignment of error as separately challenging his individual felony sentences and the imposition of consecutive sentences.

3

{¶17} We first find that Mr. Anthony has not established that his individual felony sentences are clearly and convincingly contrary to law or not supported by the record based upon the following:

{¶18} (1) The record shows that the trial court was "guided" by the third purpose of felony sentencing involving the promotion of the effective rehabilitation of the offender.

{¶19} (2) The trial court did not use the victim's death as evidence to elevate the seriousness of Mr. Anthony's conduct under R.C. 2929.12(B)(2), and "serious physical harm" is not an element of Mr. Anthony's offenses.

{¶20} (3) Evidence in the record supports a finding under R.C. 2929.12(B)(2) that the victim suffered serious physical harm, and thus, that Mr. Anthony's conduct was more serious than that normally constituting the offenses.

{¶21} (4) The trial court is expressly permitted to consider psychological harm to other persons as "other relevant factors" under R.C. 2929.12(B).

{¶22} (5) The court was required to consider Mr. Anthony's criminal history as a factor of recidivism under R.C. 2929.12(D)(2).

{¶23} (6) The trial court was not required to find that Mr. Anthony led a law-abiding life for a significant number of years under R.C. 2929.12(E)(3), and a five-year period in the life of a 24-year-old is hardly "a significant number of years."

{¶24} (7) Given Mr. Anthony's history of serious substance abuse and his unfortunate relapse despite an outstanding support system, the record does not compel a conclusion that such circumstances are unlikely to recur under R.C. 2929.12(E)(4).

{¶25} (8) The trial court is in the best position to determine the genuineness of the remorse expressed by a defendant under R.C. 2929.12(E)(5).

4

{¶26} (9) The trial court properly considered the statutory guidelines and factors, which determines consistency in sentencing.

{¶27} Second, we find the trial court made all required statutory findings for consecutive felony sentences under R.C. 2929.14(C)(4), and its statutory findings are supported by the record.

{¶28} Finally, we find Mr. Anthony has not established that the trial court abused its discretion in imposing his misdemeanor sentence because he has not rebutted the presumption that the trial court properly considered all relevant factors.

### Substantive and Procedural History

{¶29} Mr. Anthony, while operating a vehicle under the influence of alcohol and drugs, struck Mentor Police Officer Mathew Mazany ("Officer Mazany") while Officer Mazany was assisting a fellow officer in a traffic stop on State Route 2 in Mentor, Ohio. After the initial blow, Officer Mazany was pinned in between the police cruiser and Mr. Anthony's vehicle and then hurled against the vehicle that was the subject of the traffic stop. Despite heroic efforts to save him, Officer Mazany died as a result of his multiple injuries.

{¶30} The evening of drinking and drugging began when Mr. Anthony, then 24 years old, drank alcohol to the point of intoxication with a group of friends in Lakeline, Ohio, at a tragically ironic celebration of a friend's graduation from the police academy. Mr. Anthony previously received treatment for substance abuse and remained sober for approximately 5 years. He had relapsed a few months prior to this event and resumed abusing alcohol and drugs.

5

{¶31} Eventually, Mr. Anthony and his friends arranged for an Uber rideshare to transport them to downtown Willoughby where Mr. Anthony continued to drink alcohol at various bars. At one of the bars, someone gave Mr. Anthony contact information for an individual from whom he could purchase cocaine. Mr. Anthony arranged for a different Uber driver to transport him back to his car in Lakeline. According to the Uber driver, Mr. Anthony exhibited several signs of intoxication.

{¶32} After being dropped off in Lakeline, Mr. Anthony drove his vehicle to Euclid. Surveillance video showed Mr. Anthony's vehicle travel off the roadway for at least ten feet, nearly strike a chain-link fence, and then go back on the roadway. Video also showed that Mr. Anthony stopped at a BP station, where he withdrew $100 from the ATM machine, and resumed driving.

{¶33} Mr. Anthony met with the individual, purchased what he believed to be cocaine, and ingested it in his vehicle. The substance turned out to be heroin containing fentanyl. Mr. Anthony then drove his vehicle eastbound on I-90 toward State Route 2.

{¶34} Officer Mazany was assisting his fellow officer, Maryann Chaloupka ("Officer Chaloupka"), on a traffic stop on Route 2 in Mentor. Both of their police cruisers were parked on the right-side berm with emergency lights flashing behind a Toyota Camry that Officer Chaloupka has stopped for a traffic violation. Officer Chaloupka was sitting in her cruiser speaking with Officer Mazany as he stood outside her driver's side window.

{¶35} Mr. Anthony was driving his vehicle in the right-hand lane of State Route 2 at 60 miles per hour. He did not move over as he approached the two police cruisers and the Toyota Camry. As he approached, he struck Officer Mazany at highway speed and sideswiped Officer Chaloupka's cruiser and the Toyota Camry.

6

{¶36} At the point of impact, Officer Mazany's body became pinned between Mr. Anthony's vehicle and the police cruiser. He was thrust forward and to the right in a cartwheel fashion and upside down. His body struck the rear of the Toyota Camry, denting its trunk fully inward and causing the vehicle to jump with significant force, and then Officer Mazany landed on the ground. Officer Chaloupka exited her cruiser, called for help, and attempted to revive Officer Mazany. The entire event was captured by Officer Chaloupka's dash cam.

{¶37} Officer Mazany ultimately died from his injuries, which included multiple blunt force trauma with a skull fracture and crush injuries to the thorax.

{¶38} After the collision, Mr. Anthony slowed down but did not stop his vehicle, instead continuing eastbound on State Route 2. The Mentor Police Department and other law enforcement agencies began investigating the collision to identify and locate Mr. Anthony and his vehicle.

{¶39} Mr. Anthony eventually arrived at Mentor Lagoons, where he struck and damaged an automatic entrance gate as he drove in. After parking, Mr. Anthony texted the drug dealer and then was joined by a friend in inspecting the exterior damage to his vehicle. He told a friend that he had hit something but did not know what. Mr. Anthony's friends described him as being "blackout drunk." He eventually passed out in a hammock outside and woke up the next morning.

{¶40} Mr. Anthony's vehicle was located at Mentor Lagoons, and the police arrived. Mr. Anthony surrendered without incident. Blood and urine samples were collected, which showed the presence of alcohol and 6-Monoacetylmorphine, a heroin metabolite.

{¶41} The Lake County Grand Jury indicted Mr. Anthony on aggravated vehicular homicide, a felony of the second degree, in violation of R.C. 2903.06(A)(1)(a) (Count 1), OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a) (Count 2), duties upon approaching stationary public safety vehicle displaying emergency light, a minor misdemeanor, in violation of R.C. 4511.213(A) (Count 3), stopping after accident, a felony of the second degree, in violation of R.C. 4549.02(A) (Count 4), and stopping after accident, a felony of the third degree, in violation of R.C. 4549.02(A) (Count 5).

{¶42} Mr. Anthony waived his right to be present at arraignment and entered pleas of not guilty.

{¶43} At a subsequent plea hearing, the state moved to dismiss Count 4 of the indictment (stopping after accident, a felony of the second degree) because it could not be substantiated by the evidence. The trial court granted the state's motion, the charge was dismissed, and Count 5 of the indictment was renumbered as Count 4. Mr. Anthony then withdrew his previous pleas of not guilty and entered a written and oral plea of guilty to all four remaining counts in the indictment.

{¶44} The trial court accepted Mr. Anthony's plea of guilty, ordered a presentence investigation report, a drug and alcohol evaluation, a victim impact statement, and a psychological examination, and scheduled the matter for sentencing.

{¶45} At sentencing the defense presented statements from Mr. Anthony's mother, his father, his stepmother, his stepfather (a first responder who coincidentally tried to save Officer Mazany's life after the accident), and his uncle (a retired police officer). Mr. Anthony also addressed the court. The defense also submitted a detailed sentencing memorandum along with numerous letters of support.

8

{¶46} Defense counsel spoke on Mr. Anthony's behalf, and the trial court engaged him in a lengthy discussion regarding the applicability of several of the sentencing factors set forth in R.C. 2929.12.

{¶47} The state presented statements from Officer Mazany's wife, his brother, and his son.

{¶48} The trial court stated that it had reviewed and considered the presentence investigation and report, the drug and alcohol evaluation, the letters in support of Mr. Anthony, the victim impact statements, the statements in court, and the sentencing memorandum and addendum. The trial court also stated it had considered the overriding purposes and principles of felony sentencing set forth in R.C. 2929.11 and recited them. However, the trial court did not reference "the promotion of the effective rehabilitation of the offender," which the General Assembly added to the statute effective October 29, 2018.

{¶49} The trial court also made specific findings under R.C. 2929.12. With respect to the "more serious" factors under R.C. 2929.12(B), the trial court found that Officer Mazany suffered serious physical harm that resulted in his death and that Officer Chaloupka suffered serious psychological harm from witnessing the accident.

{¶50} The trial court stated it did not find any applicable "less serious" factors under R.C. 2929.12(C).

{¶51} With respect to factors under R.C. 2929.12(D) making recidivism more likely, the trial court found that Mr. Anthony had a history of two juvenile adjudications, one consisting of two counts of attempted petty theft, five counts of petty theft, and criminal damaging and endangering, and one for possession of alcohol. He also had a

9

criminal conviction in 2012 for underage consumption or possession of alcohol and another in 2013 for criminal trespass.

{¶52} The trial court stated it did not find any factors indicating recidivism is less likely under R.C. 2929.12(E).[1] It expressly found that the factor in R.C. 2929.12(E)(4) regarding whether the offense was committed under circumstances not likely to recur to be inapplicable based on Mr. Anthony's relapse after a period of sobriety.

{¶53} The trial court told Mr. Anthony that his family bears no responsibility for his situation. The trial court also engaged in a discussion with Mr. Anthony and had him confirm the series of conscious choices he made on the evening of the accident.

{¶54} The trial court ultimately sentenced Mr. Anthony to a prison term of eight years on Count 1, a prison term of 36 months on Count 4, and a jail term of 180 days on Count 2, to be served consecutively. The trial court also imposed a mandatory fine of $375 on Count 2. It expressly did not impose a fine on Count 3.

{¶55} The trial court subsequently issued a sentencing entry memorializing Mr. Anthony's sentences.

{¶56} Mr. Anthony raises the following two assignments of error:

{¶57} "[1.] The trial court erred by sentencing the defendant-appellant to the maximum consecutive sentences totaling a prison term of 11 years consecutive to 180 days of jail, when that sentence was contrary to law.

{¶58} "[2.] The trial court committed an abuse of discretion when it imposed a maximum sentence of 180-days in jail on count two."

---

1. Although the trial court stated "subsection (B)," its use of the term "recidivism" demonstrates it was referencing subsection (E).

**Individual Felony Sentences**

{¶59} In his first assignment of error, Mr. Anthony sets forth several arguments involving R.C. 2929.11 and R.C. 2929.12 to support his assertion that his "sentence" was "contrary to law." Mr. Anthony describes his "sentence" as "maximum consecutive sentences totaling a prison term of 11 years consecutive to 180 days of jail."

{¶60} In *Gwynne*, *supra*, a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. *See id*. at ¶16-18. Thus, we will review Mr. Anthony's arguments under R.C. 2929.11 and R.C. 2929.12 in relation to his individual felony sentences.

### *Standard of Review*

{¶61} The standard of review for felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶16. That provision states:

{¶62} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶63} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

11

{¶64} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶65} "(b) That the sentence is otherwise contrary to law."

{¶66} A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. (Citations omitted.) *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶18.

{¶67} Appellate courts "may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶23.

{¶68} Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Marcum* at ¶22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶69} We have recognized that the "clear and convincing standard" is "highly "deferential, as it "is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's

findings." *State v. Taeusch*, 11th Dist. Lake No. 2016-L-047, 2017-Ohio-1105, ¶13, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21.

### *R.C. 2929.11(A) – Rehabilitation*

{¶70} Mr. Anthony argues that his felony sentences are contrary to law because the trial court failed to consider the third overriding purpose of felony sentencing set forth in R.C. 2929.11(A) of "promot[ing] the effective rehabilitation of the offender."

{¶71} R.C. 2929.11 applies as a general judicial guide for every sentencing. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶36. R.C. 2929.11(A) states that the court "shall be guided by the overriding purposes of felony sentencing," which are "[1] to protect the public from future crime by the offender and others, [2] to punish the offender, and [3] to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." As Mr. Anthony correctly notes, the General Assembly added the third purpose pursuant to S.B. 66, which became effective on October 29, 2018, prior to Mr. Anthony's sentencing hearing held on April 12, 2019.

{¶72} To "achieve those purposes," the court "shall consider the need for [1] incapacitating the offender, [2] deterring the offender and others from future crime, [3] rehabilitating the offender, and [4] making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A).

{¶73} A felony sentence "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and

13

its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶74} At the sentencing hearing, the trial court stated, in relevant part:

{¶75} "I've also considered the overriding purposes and principles of felony sentencing set forth in R.C. 2929.11, the overriding purposes of which are to punish the offender and to protect the public from future crime by the offender and others by using the minimum sanction the Court determines accomplish the purposes without imposing unnecessary burden on state or local government resources. I considered the principles in that same section considering the need for incapacitation, deterrence, rehabilitation and restitution."

{¶76} In its sentencing entry, the trial court stated that it "considered * * * the principles and purposes of sentencing under R.C. 2929.11."

{¶77} Mr. Anthony argues that his felony sentences are contrary to law because the trial court failed to "consider" and "acknowledge" the third purpose of sentencing involving rehabilitation. However, R.C. 2929.11(A) requires the trial court to "be guided by" the three *purposes* of felony sentencing. It does not require the court to "consider" or "acknowledge" them. By contrast, R.C. 2929.11(A) requires the trial court to "consider" the four *principles* of felony sentencing. The trial court satisfies its obligation to consider the statutory principles by stating it considered them. *State v. Dawson*, 11th Dist. Lake No. 2015-L-109, 2016-Ohio-2800, ¶15.

{¶78} Since the trial court expressly stated at the sentencing hearing that it considered the *principles* of sentencing and then recited all four principles, including rehabilitation, we cannot say the record clearly and convincingly shows the trial court was

14

not "guided" by the third *purpose* of sentencing, which is "to promote the effective rehabilitation of the offender." *See State v. Banas*, 11th Dist. Lake No. 2019-L-049, 2019-Ohio-5053, ¶14 (a trial court met its statutory obligations under R.C. 2929.11(A) by specifically stating it considered the need for rehabilitation).

{¶79} In addition, the trial court's sentencing entry expressly states it "considered * * * the purposes and principles of sentencing set forth in R.C. 2929.11." The inclusion of language in a sentencing entry affirmatively stating that the court considered the purposes of sentencing set forth in R.C. 2929.11 defeats a claim that the trial court failed to consider those statutory guidelines. *State v. Frederick*, 10th Dist. Franklin No. 13AP-630, 2014-Ohio-1960, ¶14.

{¶80} Further, the record shows that at the sentencing hearing, the trial court stated as follows:

{¶81} "There has been a number of statements made here today in support of Mr. Anthony and by counsel also that Mr. Anthony deserves a second chance. * * * [I]t's apparent that the supporters * * *, most of the family members believed that they have failed Brian Anthony somewhere along the line and nothing can be further from the truth. They've done everything they can for you and you have failed them * * *."

{¶82} "So you had an outstanding support system for a long time that brought you 4 plus years of sobriety maybe 5 and that support system was still there and you went back to where you were back in 2012, 2013[.]"

{¶83} The trial court's statements demonstrate that it considered the concept of rehabilitation. *See State v. Kincade*, 3d Dist. Wyandot No. 16-09-20, 2010-Ohio-1497,

15

¶10 (the trial court's statements regarding unsuccessful past attempts to rehabilitate the defendant showed consideration of rehabilitation).

{¶84} Mr. Anthony also argues that the trial court was not guided by the purpose of rehabilitation because it imposed maximum sentences. However, "the trial court possesses broad discretion to determine the most effective way to comply with the purposes and principles of sentencing within the statutory guidelines." *State v. Price*, 11th Dist. Geauga No. 2007-G-2785, 2008-Ohio-1134, ¶31; *see* R.C. 2929.12(A) ("[A] court * * * has discretion to determine the most effective way to comply with the purposes and principles of sentencing").

{¶85} Further, incarceration is not inconsistent with rehabilitation. *See State v. Barrett*, 8th Dist. Cuyahoga No. 97614, 2012-Ohio-3948, ¶31 (holding that an offender's prospects for rehabilitation would not necessarily rule out a prison term). A trial court cannot "require" rehabilitation. *See State v. Gilmer*, 6th Dist. Ottawa No. OT-05-028, 2005-Ohio-6435, ¶7. It is up to a defendant to acknowledge that he needs to rehabilitate himself and take advantage of opportunities that might steer him in that direction. *Id.* Rehabilitation is a goal Mr. Anthony may work toward while serving his sentences. *See id.*

{¶86} Accordingly, Mr. Anthony has not established by clear and convincing evidence that the trial court was not guided by the purpose of rehabilitation in imposing his felony sentences.

### R.C. 2929.12(B)(2) – Serious Physical Harm

{¶87} Mr. Anthony argues that the trial court erroneously used evidence of Officer Mazany's death to elevate the seriousness of Mr. Anthony's conduct under R.C. 2929.12(B)(2).

{¶88} R.C. 2929.12 grants the sentencing judge discretion "to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A); *Foster* at ¶37. In exercising that discretion, the court shall consider, along with any other "relevant" factors, the seriousness factors set forth in divisions (B) and (C) and the recidivism factors in divisions (D) and (E) of R.C. 2929.12. R.C. 2929.12(A); *Foster* at ¶37. These statutory sections provide a nonexclusive list for the court to consider. *Foster* at ¶37.

{¶89} R.C. 2929.12(B)(2) states that the trial court "shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense: * * * The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense."

{¶90} According to Mr. Anthony, since a necessary element of both aggravated vehicular homicide (Count 1) and stopping after accident (Count 4) is the death of another person, Officer Mazany's death could not be used as evidence under R.C. 2929.12(B)(2) to elevate the seriousness of his conduct. Mr. Anthony relies on *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 & 2018-L-064, 2019-Ohio-2505, in which this court noted "there is case law that indicates '[a] trial court may not elevate the seriousness of an

offense by pointing to a fact that is also an element of the offense itself.'"  *Id.* at ¶28, quoting *State v. Sims*, 4th Dist. Gallia No. 10CA17, 2012-Ohio-238, ¶16.

{¶91} In *Polizzi*, the defendant was convicted of two counts of gross sexual imposition and six counts of sexual battery.  *Id.* at ¶6.  The defendant was a teacher to the victims, which was a necessary element of his six sexual battery convictions under R.C. 2907.03(A)(7).  *Id.* at ¶28.  We stated the relationship between the offender and victim had been "accounted for by the legislature when it established most of these offenses [R.C. 2907.03] as felonies of the third degree."  *Id.*  We concluded there was no support "for some of the findings the trial court made to justify imposition of consecutive sentences" and that the defendant's "sentences for sexual battery should not be elevated based on his status as a teacher to the victims."  *Id.* at ¶47.

{¶92}  As this court has recently recognized, the holding in *Polizzi* was that the trial court's consecutive sentence findings under R.C. 2929.14(C)(4) were clearly and convincingly not supported by the record.  *Banas*, *supra*, at ¶25.  We have declined to apply *Polizzi* to the argument that a trial court's seriousness findings under R.C. 2929.12 are not supported by the record.  *Id.*

{¶93}  Further, the trial court in this case did not consider Officer Mazany's death as a seriousness factor.  For instance, in *State v. Ivkovich*, 2d Dist. Montgomery No. 27465, 2018-Ohio-609, the trial court found that the death of a victim of aggravated vehicle homicide constituted serious physical harm under R.C. 2929.12(B)(2).  *Id.* at ¶36.  The Second District determined that a trial court's consideration of the victim's death as a factor indicating the defendant's conduct was more serious than conduct normally constituting the offense was improper.  *Id.* at ¶37.

18

{¶94} Contrary to Mr. Anthony's argument, however, the trial court in this case did not use Officer Mazany's death as evidence to elevate the seriousness of Mr. Anthony's conduct. Rather, the trial court stated:

{¶95} "I've considered the seriousness and recidivism factors in 2929.12(B) through (E) and under (B)(2) I find the victim suffered serious physical harm, that resulted in his death. And I will say that in reviewing one of the exhibits the State submitted under seal, that being the dash cam…that it seemed as though from reviewing there was an effort to revive Officer Mazany…but nonetheless he suffered death as a result of this action by the defendant."

{¶96} Thus, the trial court's references to the victim suffering serious physical harm that *resulted* in his death and to evidence indicating the victim may not have died immediately from his injuries demonstrate it considered serious physical harm apart from the victim's death to elevate the seriousness of Mr. Anthony's conduct.

{¶97} In addition, the offenses of aggravated vehicular homicide and stopping after accident do not require proof of "serious physical harm." *See* R.C. 2903.06 and 4549.02(A). In *State v. Liming*, 2d Dist. Greene No. 03CA43, 2004-Ohio-168, the Second District stated that the "serious physical harm" factor under R.C. 2929.12(B)(2) applies in every case of aggravated vehicular homicide because the offense always involves death. *Id*. at ¶23. *See also State v. Young*, 3d Dist. Logan No. 8-18-11, 2018-Ohio-492, ¶23 (equating death to serious physical harm); *State v. Preston*, 10th Dist. Franklin No. 91AP-549, 1991 WL 317623, *3 (Dec. 10, 1991) (same).

{¶98} This court, however, has recognized that although death typically entails "serious physical harm," the terms are not synonymous. *State v. McBee*, 11th Dist.

19

Geauga No. 2017-G-0149, 2019-Ohio-2967, ¶32.  "[D]eath" is "[t]he ending of life; the cessation of all vital functions and signs."  *Id.*, quoting *Black's Law Dictionary* (10th Ed.2014).  The definition of "serious physical harm to persons" under R.C. 2901.01(A)(5) does not include death.  Instead, it includes any of the following:

{¶99}  "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

{¶100} "(b) Any physical harm that carries a substantial risk of death;

{¶101} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

{¶102} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

{¶103} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."  R.C. 2901.01(A)(5)(a)-(e); *McBee* at ¶33-38.

{¶104} Since proof of "serious physical harm" is not an element of the offenses of aggravated vehicular homicide and stopping after accident, the trial court's finding is not contrary to law.

{¶105} Mr. Anthony also argues that the trial court's finding that Officer Mazany suffered serious physical harm is not supported by the record.

{¶106} A trial court may rely on the "serious physical harm" endured by the victim where the record details or references "serious physical harm" preceding death that would render the defendant's conduct more serious than conduct normally constituting the offense.  *McBee* at ¶39.

20

{¶107} In this case, the trial court referenced State's Exhibit 1, which is a part of the record and contains video from Officer Chaloupka's dash cam. This video depicts a horribly violent event. According to the state's factual basis at the plea hearing, which Mr. Anthony confirmed, Officer Mazany sustained blunt force trauma, a skull fracture, and crush injuries to the thorax. Any accident resulting in convictions for these felony offenses necessarily involves physical injury resulting in a tragic death. However, not all accidents involve what is depicted on the dash cam video - a person's body being struck by a vehicle traveling at highway speed. Further, the dash cam video and the presentence investigation report confirm the trial court's finding that there was an effort to revive Officer Mazany, which indicates he may not have immediately died from his injuries.

{¶108} Accordingly, evidence in the record supports a finding under R.C. 2929.12(B)(2) that Officer Mazany suffered serious physical harm as a result of Mr. Anthony's offense, and thus, Mr. Anthony's conduct was more serious than that normally constituting the offenses.

### R.C. 2929.12(B)(2) – Psychological Harm

{¶109} Mr. Anthony argues that the trial court erroneously considered psychological harm to persons other than "the actual victim" to elevate the seriousness of Mr. Anthony's conduct under R.C. 2929.12(B)(2).

{¶110} R.C. 2929.12(B)(2) requires the trial court to consider if "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense," as a factor "indicating that the offender's conduct is more serious than conduct normally constituting the offense."

{¶111} At the sentencing hearing, the trial court stated:

{¶112} "Miss Azouri mentioned that Officer Chaloupka suffered some psychological harm. I don't know how you could say anything but serious psychological harm even though I don't have a psychological report because I witnessed that video, she witnessed it in person and Officer Govedich was the next one to come on the scene and several officers thereafter came and witnessed what had just occurred. So clearly 2929.13(B)(2) (E), (B)(2) [sic] is applicable."

{¶113} Although the trial court stated "R.C. 2929.13(B)(2)," the trial court's use of the phrase "serious psychological harm" indicates it was referring to R.C. 2929.12(B)(2).

{¶114} Defense counsel requested a sidebar and objected to the trial court's consideration of harm to anyone other than Officer Mazany under R.C. 2929.12(B)(2). Following sidebar, the trial court stated in open court:

{¶115} "Under subsection (B)(9) [sic] other relevant factors there were a multitude of Mentor police officers who both witnessed what happened, one of them live, many more by video in an attempt to figure out what evidence they could garner from the dash cam. So (B)(9) [sic] is also applicable."

{¶116} Although the trial court stated "(B)(9)," this subsection does not contain the phrase "other relevant factors" and is otherwise inapplicable. In context, the trial court's use of the phrase "other relevant factors" indicates it was referring to R.C. 2929.12(B), which states the trial court "shall consider" the applicable factors set forth in (B)(1) through (9) and "any other relevant factors."

{¶117} Mr. Anthony argues that the clear statutory language of R.C. 2929.12(B)(2) does not apply to persons other than the actual victim. However, the statutory language merely refers to "[t]he victim of the offense," which is not determinative of its scope.

22

{¶118} The Ohio Revised Code does not contain a general definition of the term "victim," nor does Ohio's criminal code, Title 29, define the term. *See State v. Orms*, 10th Dist. Franklin No. 14AP-750, 2015-Ohio-2870, ¶15. The Ohio Revised Code contains definitions of "victim" in other contexts. *See, e.g.*, R.C. 2305.111(A)(6) (involving actions for assault or battery); R.C. 2743.51(L) (involving claims for an award of reparations in the court of claims); R.C. 2930.01(H) (involving rights of victims of crime). Courts have expressly declined to utilize the definitions set forth in other sections for purposes of sentencing. *See, e.g., State v. Goudy*, 7th Dist. Belmont No. 15 BE 0046, 2016-Ohio-5193, ¶14 ("R.C. 2930.01's definition of 'victim' is specific only to that chapter of the revised code").

{¶119} The state cites Article I, Section 10a of the Ohio Constitution, i.e., Marsy's Law, which contains an expansive definition of "victim." However, it does not appear that any court has utilized this definition for purposes of sentencing, and at least one court has expressly declined to do so in the context of awarding restitution to a "victim." *See, e.g., Centerville v. Knab*, 2d Dist. Montgomery No. 28081, 2019-Ohio-1903, ¶31. Instead, this court and others have used the more limited definition of "victim" contained in *Black's Law Dictionary* as "a person who is the object of a crime or tort." *See, e.g., State v. Pietrangelo*, 11th Dist. Lake No. 2003-L-125, 2005-Ohio-1686, ¶15 (involving restitution under R.C. 2929.18); *Knab* at ¶27 (involving restitution under R.C. 2929.28).

{¶120} Regardless of the proper scope of the term "victim" under R.C. 2929.12(B)(2), the trial court also considered psychological harm to persons other than Officer Mazany as "other relevant factors," which it is expressly permitted to consider

under R.C. 2929.12(B).  As the Supreme Court of Ohio has recognized, the statutory sections provide a *nonexclusive* list for the court to consider.  *See Foster* at ¶37.

{¶121} Therefore, Mr. Anthony has not established by clear and convincing evidence that the trial court's consideration of psychological harm to other persons made his felony sentences contrary to law.

### R.C. 2929.12(D)(2) – Criminal History

{¶122} Mr. Anthony argues that the trial court erroneously found that recidivism was more likely pursuant to R.C. 2929.12(D)(2) based on Mr. Anthony's "minimal" history of juvenile adjudications and criminal convictions.

{¶123} R.C. 2929.12(D)(2) states that the trial court "shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes: * * * The offender previously was adjudicated a delinquent child * * *, or the offender has a history of criminal convictions."

{¶124} At the sentencing hearing, the trial court stated:

{¶125} "Subsection (D) factors indicating recidivism is more likely there is a history of adjudications and criminal convictions, they are not, the determination of the consideration of these factors is not relegated to similar crimes.  There is a juvenile adjudication of two counts of attempted petty theft, five counts of petty theft, criminal damaging and endangering.  There is an adjudication for possession of alcohol.  There is a conviction in 2012 for under age consumption or possession of alcohol and in 2013 conviction for criminal trespass."

24

{¶126} Mr. Anthony does not argue that the trial court's findings under R.C. 2929.12(D)(2) were not supported by record. Rather, Mr. Anthony argues that the trial court's consideration of his history of adjudications and criminal convictions makes his sentences contrary to law because he had a period of approximately five years of law-abiding behavior and sobriety, which is a mitigating factor under R.C. 2929.12(E)(3).

{¶127} Mr. Anthony repeatedly refers to his history as "minimal," which is a questionable characterization. Mr. Anthony has two juvenile adjudications, one involving multiple counts, and another involving an alcohol offense. Mr. Anthony was 24 years old at the time he committed the underlying offenses and had already incurred two prior convictions as an adult, including one involving alcohol. Obviously, alcohol played a large role in Mr. Anthony's conduct in this case, which makes his prior alcohol offenses particularly relevant to the issue of recidivism.

{¶128} R.C. 2929.12(D) states that the trial court "shall consider all of the" factors set forth in (D)(1) through (5) "that apply regarding the offender, * * * as factors indicating that the offender is likely to commit future crimes." Thus, since Mr. Anthony has a history of adjudications and convictions, the trial court was *required* to consider it as a factor of recidivism under R.C. 2929.12(D)(2). *See State v. Shepard*, 11th Dist. Ashtabula No. 2019-A-0024, 2019-Ohio-3995, ¶72.

{¶129} Further, the trial court is not obligated to give any particular weight or consideration to any sentencing factor. *State v. Holin*, 174 Ohio App.3d 1, 2007-Ohio-6255, ¶34 (11th Dist.). Provided that the sentencing court duly considers the appropriate sentencing factors, it has full discretion to impose a sentence within the statutory range. *Id.*

25

{¶130} Mr. Anthony also asserts that the trial court's findings are contradicted by the probation department's presentence evaluation of his criminal history, which he claims showed he is "at the lowest risk to reoffend" based on that history.

{¶131} This characterization is misleading. The Ohio Risk Assessment System involves seven domains of risk to reoffend, one of which is the offender's criminal history. While the probation department assessed Mr. Anthony's risk to reoffend based on "criminal history" to be "low," it assessed four other domains as creating a "moderate" risk and Mr. Anthony's "substance use" as creating a "high" risk. And as indicated, Mr. Anthony's history includes two prior alcohol offenses.

{¶132} In any event, a presentence investigation report is one of various factors for a trial court's consideration when imposing sentence. *State v. Walters*, 4th Dist. Washington Nos. 13CA33 & 13CA36, 2014-Ohio-4966, ¶13; *see* R.C. 2929.19(B)(1) ("At the sentencing hearing, the court, before imposing sentence, shall consider * * * if one was prepared, the presentence investigation report"). A trial court is not bound by the presentence investigation report. *See Walters* at ¶13. In this case, the trial court stated at the outset that it had considered the presentence investigation report. Even if the report contradicted the trial court's findings, any such contradiction would not make Mr. Anthony's felony sentences clearly and convincingly contrary to law. *See id.*

{¶133} Accordingly, Mr. Anthony has not established by clear and convincing evidence that the trial court's consideration of Mr. Anthony's history of adjudications and criminal convictions made his felony sentences contrary to law.

### R.C. 2929.12(E)(3) – Law-Abiding Life

{¶134} Mr. Anthony argues that the trial court's failure to find he had led a law-abiding life for a significant number of years prior to committing the offenses pursuant to R.C. 2919.12(E)(3) makes his felony sentences contrary to law.

{¶135} R.C. 2929.12(E)(3) requires the trial court to consider if "[p]rior to committing the offense, the offender had led a law-abiding life for a significant number of years" as a factor "indicating that the offender is not likely to commit future crimes." The trial court stated it found none of the factors set forth in "subsection (B)" to be applicable, although context makes clear the trial court was referencing subsection (E).

{¶136} As previously indicated, a sentence is not contrary to law when, like in this case, it is within the statutory range and the trial court stated that it considered the sentencing factors in R.C. 2929.12. *See Wilson* at ¶18.

{¶137} Although the trial court did not expressly discuss R.C. 2929.12(E)(3), the record does not compel a finding under this section. The record reflects that Mr. Anthony was only 24 years old when he committed the offenses and had two adjudications as a juvenile and two criminal convictions as a young adult. Mr. Anthony also abused illegal substances throughout adolescence until age 20.

{¶138} While Mr. Anthony was sober as an adult for approximately five years prior to these offenses, it is arguable whether a period of five years in the life of a 24-year-old constitutes "a significant number of years." *See State v. Brittian*, 10th Dist. Franklin No. 01AP-621, 2002 WL 77133, *9 (Jan. 22, 2002) ("one might surmise that the trial court did not deem a period of approximately six years a 'significant number of years' for purposes of this mitigation statute").

{¶139} Therefore, Mr. Anthony has not established by clear and convincing evidence that the trial court's failure to find this factor applicable made his felony sentences contrary to law.

### R.C. 2929.12(E)(4) – Circumstances Not Likely to Recur

{¶140} R.C. 2929.12(E)(4) requires the trial court to consider if "the offense was committed under circumstances not likely to recur" as a factor "indicating that the offender is not likely to commit future crimes." Mr. Anthony argues that the trial court's finding that this factor was inapplicable is not supported by the record.

{¶141} The trial court stated as follows:

{¶142} "Under factors that indicate recidivism is less likely I find applicable (E)(4). (B)(4), I do not find (B)(4) [sic] applicable as discussed by Mr. Perez because I think taking the predictability out of equation which should be taken out of the equation all by itself you can't predict what's going to happen in the future but you can tell what may occur based on what happened in the past. And what happened in the past is a serious drug and alcohol problem. There was treatment, there was a period of sobriety and then the sobriety ended some time as near as I can tell near around April of 2018 and it continued and it got wrapped up to the extent that cocaine is involved on a weekly basis and as a result here we are today. So there are no factors that I find applicable under subsection (B) [sic]."

{¶143} As previously indicated, the context demonstrates the trial court was referencing R.C. 2929.12(E)(4).

{¶144} Mr. Anthony argues that that trial court's "dismissal" of predictability in its statement above demonstrates an incorrect analysis. Despite this extemporaneous

28

comment, the trial court appeared to be engaged in a predictability analysis ("you can tell what may occur based on what happened in the past").

{¶145} Mr. Anthony also argues that the circumstances surrounding his offenses were "extreme and unique" and "would be difficult to replicate." Given Mr. Anthony's history of serious substance abuse and his unfortunate relapse despite an outstanding support system, the record does not compel a conclusion that such circumstances are unlikely to recur. *See State v. Carter*, 11th Dist. Portage No. 2006-P-0056, 2007-Ohio-4953, ¶22 (finding that a defendant's propensity to re-offend was not unlikely to recur where he had an ongoing substance abuse problem).

{¶146} Accordingly, Mr. Anthony has not established by clear and convincing evidence that the trial court's finding was not supported by the record.

### R.C. 2929.12(E)(5) – Genuine Remorse

{¶147} R.C. 2929.12(E)(5) requires the trial court to consider if "the offender shows genuine remorse for the offense" as a factor "indicating that the offender is not likely to commit future crimes." Mr. Anthony argues that the trial court's failure to find that he showed "genuine remorse" makes his felony sentences contrary to law.

{¶148} As previously indicated, a trial court's failure to make a particular finding does not make a sentence contrary to law.

{¶149} The trial court made the following statement at the sentencing hearing, which indicates it had considered Mr. Anthony's expressions of remorse:

{¶150} "So you have an outstanding support system for a long time that brought you 4 plus years of sobriety maybe 5 and that support system was still here and you went back to where you were back in 2012, 2013 so your family bears no responsibility for the

29

situation you're in right now. I'm not, I'm not sure that, that you're of that belief. I don't get that from you. Maybe you believe that, I don't get it from you."

{¶151} Further, the trial court is in the best position to determine the genuineness of the remorse expressed by a defendant. *State v. Davis*, 11th Dist. Lake No. 2003-L-027, 2004-Ohio-2076, ¶29. Because the trial court observed Mr. Anthony directly, it was in the best position to assess his demeanor and sincerity regarding his remorse for the offenses. *See id*.

{¶152} Therefore, the trial court's failure to find that Mr. Anthony showed genuine remorse does not make Mr. Anthony's felony sentences contrary to law.

### *Consistency in Sentencing*

{¶153} Mr. Anthony argues that his felony sentences are contrary to law because it is disproportionate to and inconsistent with similar crimes committed by similar offenders.

{¶154} R.C. 2929.11(B) requires that among other things, a felony sentence "shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." We have held that sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses. *State v. Lloyd*, 11th Dist. Lake No. 2006-L-185, 2007-Ohio-3013, ¶51, citing *State v. Spellman*, 160 Ohio App.3d 718, 2005-Ohio-2065, ¶12 (11th Dist.). Instead, "it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency." *Id*., quoting *State v. Swiderski*, 11th Dist. Lake No. 2004-L-112, 2005-Ohio-6705, ¶58. The factors and guidelines contained in R.C. 2929.12, R.C. 2929.13, and R.C. 2929.14, along with R.C. 2929.11, create consistency in sentencing. *Id*., quoting *State v.*

*Quine*, 9th Dist. Summit No. 20968, 2002-Ohio-6987, ¶13. Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory guidelines and factors. *Id.*

{¶155} Mr. Anthony relies on his prior arguments to support his assertion that the trial court failed to properly consider the statutory guideline and factors. As demonstrated above, Mr. Anthony has not established by clear and convincing evidence that the trial court failed to do so.

{¶156} Mr. Anthony also suggests his sentences may "demean the seriousness of other more violent crimes." It is difficult to imagine how Mr. Anthony's actions could have resulted in a more violent encounter than that depicted on the dash cam video.

{¶157} Based on the foregoing, Mr. Anthony has not established by clear and convincing evidence that his individual felony sentences are contrary to law or not supported by the record.

**Consecutive Prison Terms**

{¶158} Within his first assignment of error, Mr. Anthony raises arguments under R.C. 2929.14(C) to purportedly challenge the trial court's imposition of consecutive prison terms for two felonies *and* a consecutive jail term for a misdemeanor. R.C. 2929.14(C)(4) is limited to the imposition of consecutive "prison terms" rather than "jail terms." *State v. Alexander*, 8th Dist. Cuyahoga No. 102708, 2016-Ohio-204, ¶6. R.C. 2929.41(B) governs the trial court's imposition of a consecutive jail term for a misdemeanor. *See id.* at ¶4. Thus, we will review the trial court's imposition of consecutive prison terms for Mr. Anthony's two felony convictions.

31

## Standard of Review

{¶159} The standard of review for the imposition of consecutive prison terms is also governed by the clearly and convincingly standard set forth in R.C. 2953.08(G)(2). *See Gwynne*, *supra*, at ¶16.

{¶160} R.C. 2929.41(A) provides, in pertinent part: "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state * * *."

{¶161} Pursuant to R.C. 2929.14(C)(4), a trial court may order multiple prison terms for convictions of multiple offenses to be served consecutively if the court finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" The trial court must also find that one of the following statutory factors applies:

{¶162} "(a) The offender committed one or more of the multiples offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶163} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

32

{¶164} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

### Contrary to Law

{¶165} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See id.* The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

{¶166} At the sentencing hearing, the trial court stated:

{¶167} "And those sentences are, shall be consecutive to one another. And I find that consecutive sentences are necessary both to punish you and that the consecutive sentence is not disproportionate to the seriousness of your conduct and the danger that you pose to the public. I further find that your history of criminal conduct demonstrates that a consecutive sentence is necessary to protect the public from future crime by you."

{¶168} In its sentencing entry, the trial court stated:

{¶169} "Pursuant to R.C. 2929.14(C)(4) and R.C. 2929.19(B)(2)(b), the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the Defendant's conduct and the danger the Defendant poses to the public; and the

Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant."

{¶170} The necessary findings are in the record and are incorporated into the sentencing entry. Thus, the trial court's imposition of consecutive prison terms in this case is not contrary to law.

### *Supported by the Record*

{¶171} Mr. Anthony also argues that the trial court's findings under R.C. 2929.14(C)(4) are not supported by the record.

{¶172} According the Supreme Court of Ohio, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell* at ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶29.

{¶173} Mr. Anthony claims that since the trial court misapplied the seriousness factors in R.C. 2929.12(B), "little evidence" suggests consecutive sentences were necessary to punish him.

{¶174} A finding that punishment is necessary under R.C. 2929.14(C)(4) is not dependent on the applicability of the seriousness factors under R.C. 2929.12(B)(2). In fact, the plurality in *Gwynne* held that appellate courts may not review consecutive sentences for compliance with R.C. 2929.11 and R.C. 2929.12. *See id.* at ¶18. The record provides numerous justifications for the trial court's finding under R.C. 2929.14(C)(4) that consecutive sentences are necessary to punish Mr. Anthony.

{¶175} Mr. Anthony also claims that the trial court's finding that consecutive sentences were necessary to protect the public was not supported by his "minimal criminal history."

{¶176} As demonstrated above, the record does not support this characterization of Mr. Anthony's criminal history. Further, this history includes two prior alcohol offenses, and his risk to reoffend based on "substance use" was assessed as "high." Thus, the record supports the trial court's finding under R.C. 2929.14(C)(4)(c) that consecutive sentences are necessary to protect the public from future crime by Mr. Anthony.

{¶177} Accordingly, the record contains evidence supporting the trial court's findings under R.C. 2929.14(C)(4).

{¶178} Mr. Anthony's first assignment of error is without merit.

### Misdemeanor Sentence

{¶179} In his second assignment of error, Mr. Anthony argues that the trial court abused its discretion in imposing a 180-day jail sentence on his misdemeanor count of OVI.

### *Standard of Review*

{¶180} "Misdemeanor sentencing is within the discretion of the trial court and a sentence will not be disturbed absent an abuse of discretion." *Conneaut v. Peaspanen*, 11th Dist. Ashtabula No. 2004-A-053, 2005-Ohio-4658, ¶18, citing *State v. Wagner*, 80 Ohio App.3d 88, 95–96 (12th Dist.1992). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-78 (1925). An abuse of discretion is the

35

trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

### *Sentencing Factors*

{¶181} In fashioning an appropriate sentence in a misdemeanor case, the trial court must consider the factors set forth under R.C. 2929.22. *Conneaut v. Coleman*, 11th Dist. Ashtabula No. 2010-A-0062, 2011-Ohio-5099, ¶22. A trial court's failure to consider the R.C. 2929.22 factors amounts to an abuse of discretion. *State v. Rogers*, 11th Dist. Trumbull Nos. 2009-T-0051 & 2009-T-0052, 2010-Ohio-197, ¶11. Absent a showing otherwise, however, if the sentence lies within the statutory limit, a reviewing court will presume that the trial judge followed the standards required by the statute. *State v. Peppeard,* 11th Dist. Portage No. 2008-P-0058, 2009-Ohio-1648, ¶75. A silent record raises the presumption that the trial court considered all of the factors. *Id.* Further, there is no requirement that the court state on the record it considered the statutory sentencing criteria. *State v. Kish*, 11th Dist. Lake No. 2010-L-138, 2011-Ohio-4172, ¶8, citing *Peaspanen* at ¶29.

{¶182} In this case, the record is silent regarding the purposes or factors related to Mr. Anthony's misdemeanor sentence. Mr. Anthony acknowledges the above legal authorities but argues that the trial court's "other errors" in felony sentencing rebut the presumption that the trial court properly considered the applicable factors.

{¶183} As indicated above, we do not find any errors on the part of the trial court in imposing Mr. Anthony's individual or consecutive felony sentences. Further, Mr. Anthony cites to no authority stating that a trial court's alleged errors in felony sentencing is

sufficient to rebut a presumption that the trial court properly considered all of the applicable factors for a misdemeanor sentence.

{¶184} Mr. Anthony's second assignment of error is without merit.

{¶185} Based on the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only with a Concurring Opinion.

_____


THOMAS R. WRIGHT, P. J., concurs in judgment only with a Concurring Opinion.

{¶186} I concur but write separately because I disagree with the majority's conclusion that the trial court properly found serious physical harm as a factor making Anthony's conduct more serious than conduct normally constituting the offense.

{¶187} The sentencing factors in R.C. 2929.12(B) and (C) are to be used by the court to impose an appropriate sentence within the sentencing range. R.C. 2929.12(B) sets forth factors a court must consider indicating the offender's conduct is more serious than conduct normally constituting the offense and warranting a longer sentence. And R.C. 2929.12(C) delineates factors a court must consider indicating the offender's conduct is less serious than conduct normally constituting the offense thereby warranting a shorter sentence.

{¶188} R.C. 2929.12(B) states in part:

37

{¶189} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, *as indicating that the offender's conduct is more serious than conduct normally constituting the offense*:

{¶190} "* * *

{¶191} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense."

{¶192} While I agree that the victim suffered serious physical harm, I disagree that this demonstrates that Anthony's *conduct* is more serious than conduct normally constituting the offense. Anthony drove his vehicle under the influence, struck and killed an officer, and drove away. He was convicted, in part, of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a):

{¶193} "(A) No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * in any of the following ways:

{¶194} "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance [OVI] * * *."

{¶195} That is exactly what happened here, i.e., Anthony while driving under the influence of alcohol and/or drugs struck and killed the victim. Appellant's conduct was horrible and the resulting harm tragic. However, in the context of an aggravated vehicular homicide, both the conduct and serious physical harm are what normally occurs. It therefore cannot support a conclusion that this aggravated vehicular homicide is more serious than other aggravated vehicular homicides.

{¶196} Notwithstanding, because the court's other findings support Anthony's sentence, I concur.