[Cite as *State v. Hull*, 2017-Ohio-157.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-035** |
| FLOYD J. HULL, SR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000387.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*G. Michael Goins*, 1015 West Hill Drive, Gates Mills, OH 44040 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Floyd J. Hull, Sr., appeals his sentence following his guilty plea to trafficking heroin and marihuana. For the following reasons, we affirm.

{¶2} Hull was indicted on ten counts following a traffic stop during which police found varying types of illegal drugs in his vehicle. He was charged with: (1) possession of 27.67 grams of heroin, a second-degree felony in violation of R.C. 2925.11; (2)

trafficking 27.67 grams of heroin, a second-degree felony in violation of 2925.03(A)(2); (3) possession of 5.27 grams of cocaine, a fourth-degree felony in violation of 2925.11; (4) trafficking 5.27 grams of cocaine, a fourth-degree felony in violation of R.C. 2925.03(A)(2); (5) possession of 21 doses of ketamine, a first-degree misdemeanor in violation of 2925.11; (6) aggravated trafficking of drugs, i.e., ketamine, a fifth-degree felony in violation of 2925.03(A)(2); (7) aggravated possession of five unit doses of bk-MDEA (ethylone) a fifth-degree felony in violation of R.C. 2925.11; (8) aggravated trafficking in bk-MDEA (ethylone), a fourth-degree felony in violation of R.C. 2925.11; (9) trafficking 125.10 grams of marihuana, a fifth-degree felony in violation of R.C. 2925.03(A)(2); and (10) possession of criminal tools, a fifth-degree felony in violation of R.C. 2923.24. Each of the ten offenses had attendant forfeiture specifications.

{¶3} Hull's case was set for jury trial on October 13, 2015. On October 9, 2015, Hull's counsel filed a motion to suppress all evidence seized from his vehicle and all statements made by Hull. Hull alleged that his stop was illegal and that he was improperly induced into confessing by investigating officers in exchange for leniency. His counsel did not file a motion to continue the trial.

{¶4} On the morning of the scheduled trial, the court overruled his suppression motion as untimely, and Hull pleaded guilty to counts two and nine and the attendant forfeiture specifications. The eight remaining charges were dismissed. His plea agreement points out that Hull was facing up to a total of nine years in prison. The court ordered a presentence investigation report and set Hull's sentencing hearing for November 23, 2015. Hull did not appear at sentencing. The trial court revoked his bond and issued a warrant for his arrest.

2

{¶5} Pursuant to Hull's surety agent's affidavit, "with the assistance of a Recovery Agent, the Defendant, Floyd Hull was apprehended and surrendered to the Lake County Sheriff's Office on February 25, 2016[,]" three months after his originally scheduled sentencing hearing.

{¶6} Hull was subsequently sentenced to a mandatory term of five years in prison on count two, and nine months in prison on count nine to be served concurrently.

{¶7} Hull asserts two assigned errors on appeal:

{¶8} "Trial court erred by using factual inaccuracies and/or inappropriate information as factors pursuant to R.C. 2929.12, seriousness and recidivism factors to determine defendant's length of sentence which resulted in a disproportionate sentence in violation of R.C. 2929.11(B) [sic] therefore making defendant's sentence contrary to law.

{¶9} "Trial court committed reversible error and plain error when it failed to sentence the defendant-appellant to the minimum term of incarceration of two (2) years to correct the manifest injustice and constitutional violations that occurred within the present case."

{¶10} Hull first alleges that his sentence is contrary to law since the trial court's findings made at the sentencing hearing are not supported by the record.

{¶11} R.C. 2953.08(G)(2) sets forth our standard of review upon considering a challenge to a trial court's criminal sentencing decision. It states:

{¶12} "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

3

**{¶13}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶14}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶15}** "(b) That the sentence is otherwise contrary to law."

**{¶16}** "'Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶22.

**{¶17}** Thus, we are authorized to "increase, reduce, or otherwise modify a sentence only when [we] clearly and convincingly find * * * that the sentence is (1) contrary to law and/or (2) unsupported by the record." *State v. McGowan*, 147 Ohio St.3d 166, 2016-Ohio-2971, 62 N.E.3d 178, ¶1.

**{¶18}** In sentencing an offender for a felony, a trial court is required to consider the purposes of felony sentencing in R.C. 2929.11(A) and consider the statutory seriousness and recidivism factors in R.C. 2929.12(A). *State v. Morefield*, 2014-Ohio-

4

5170, 24 N.E.3d 633, ¶35 (2d Dist.).  A sentencing court does not have to use specific language and render precise findings to satisfactorily "consider" the relevant seriousness and recidivism factors.  *State v. Long*, 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶79.  Instead, the defendant has the burden to affirmatively show that the court did not consider the applicable sentencing criteria or that the sentence imposed is "strikingly inconsistent" with the applicable sentencing factors.  *Id.*

{¶19} Hull's prison term of five years for trafficking 27.67 grams of heroin, a second-degree felony in violation of 2925.03(A)(2) was within the permissible range under R.C. 2929.14(2).  His concurrent nine-month term for trafficking 125.10 grams of marihuana, a fifth-degree felony in violation of R.C. 2925.03(A)(2), was also in the authorized range.  Neither sentence is the maximum.

{¶20} Hull's first assigned error takes issue with four findings made by the court at his sentencing hearing in support of its decision finding Hull's offense more serious than the type of offense normally constituting the offense.

{¶21} First, Hull argues the trial court erred in finding that he had previously served a thirteen-year sentence for his prior rape conviction.  Instead, Hull contends that he only served nine years and six months in prison as a result of his 1986 rape conviction.  The trial court's findings include:

{¶22} "As for recidivism factors, the Court finds the Defendant does have a history of criminal convictions the Court finds dating back to 1982, a misdemeanor charge.  Then there's the rape conviction which was alluded to by the parties here back in 1985.  The Defendant served thirteen years in prison on that.  Released in May of '99.  Released from parole in 2001.  A couple of years later he committed another

5

offense where he was prosecuted in Federal Court and was sentenced over three years in prison in Federal Court just a couple of years after being released on the rape conviction. Another drug conviction back in 2011, then this conviction. He's not responded favorably to previously imposed sanctions."

{¶23} Contrary to Hull's argument, the presentence investigation supports the trial court's finding. It indicates that he was admitted to prison on April 10, 1986 and released May 17, 1999, which is more than 13 years. Further, the trial court judge states at sentencing that both sides had an opportunity to review the presentence report and yet Hull's counsel made no objection to his prison admission or release date. Moreover, upon sentencing Hull, the judge asked him if there was anything he wanted to add to the record. Neither Hull nor his counsel alerted the court to the allegedly inaccurate prison term. Finally, there is nothing in the record evidencing that Hull served nine years, and not 13, and regardless of the length of the sentence associated with Hull's rape conviction, the trial court relies more on the fact that he was convicted and served prison time, and not the actual length of his term. Thus, we find no error.

{¶24} Second, Hull takes issue with the trial court's statement that he missed his original sentencing hearing because he admitted himself into the hospital that same date. Instead, Hull asserts that he actually went to the hospital the day before his originally scheduled sentencing hearing, and not on the day of his sentencing, and that the hospital staff did not actually admit him until the date of sentencing. Nonetheless, the trial court's reference to this fact is merely incidental to its finding that Hull's whereabouts were unknown for three months thereafter, and as such, recidivism is more likely in his case. The court states:

6

{¶25} "Other relevant factors the Court finds indicating recidivism is more likely is the fact that Defendant absconded from the jurisdiction here and he failed to appear at the time of sentencing. It's been represented today that he admitted himself into a hospital that day, but he's been gone for more than three months. * * *

{¶26} "No factors indicating recidivism is less likely."

{¶27} Thus, whether Hull went to the hospital the day of his sentencing or the day before is inconsequential since the other relevant factor relied on by the court was the fact that he failed to appear and was subsequently not found and arrested until three months after missing his original sentencing date. Thus, we find no error.

{¶28} Third, Hull argues that the trial court erroneously finds that he acted as part of organized criminal activity as a seriousness factor.

{¶29} R.C. 2929.12(B) states in part:

{¶30} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

{¶31} "* * *

{¶32} "(7) The offender committed the offense * * * as a part of an organized criminal activity."

{¶33} The court stated at Hull's sentencing hearing:

{¶34} "[J]ust the sheer volume of drugs involved in this case, especially in a Lake County case, makes this offense more serious than the normal offenses that we

7

deal with of a similar nature.  Plus the Court finds the Defendant acted as part of organized criminal activity."

**{¶35}**  Although one of the enumerated seriousness factors in R.C. 2929.12 is whether the offender committed the offense as "a part of an organized criminal activity," the statute does not define the term.  Notwithstanding, Ohio courts have concluded that whether one acts as a part of an organized criminal activity to support a sentencing finding should be determined on a case-by-case basis upon construing the term against the state.  *State v. Fuller,* 12th Dist. Madison No. CA2006-11-047, 2008-Ohio-20, ¶7; *State v. Lyles*, 8th Dist. Cuyahoga No. 97524, 2012-Ohio-3362, ¶13.  In *State v. Eckliffe*, 11th Dist. Lake No. 2001-L-104, 2002-Ohio-7135, we considered this precise issue in a similar context and found:

**{¶36}**  "[b]ecause virtually every street level drug deal involves some element of organized criminal activity, we presume that the legislature considered the element of organized criminal activity inherent in trafficking * * * when it determined that said offense was a felony * * *.  * * * by its very nature, trafficking in [drugs] denotes participation in organized criminal activity.  Nevertheless, we determine that the trial court should make findings that support a conclusion that a particular trafficker's involvement in organized criminal activity is greater than normal for someone engaged in the street sale of illicit drugs.  It is inappropriate for the court to find that an offender's participation in organized criminal activity inherently involved in any level of trafficking would be sufficient to make his offense more serious than normal."  *Id.* at ¶26.

**{¶37}**  Thereafter, we found that the facts in *Eckliffe* did not support the finding that his offense was more serious since his offense involved participation in organized

8

crime. We explained that *Eckliffe* appeared to have acted independently without accomplices and that the amount of cocaine involved was small. *Id.* Notwithstanding, this court nonetheless affirmed the trial court's sentence because the trial court was not required to state its reasons or findings on the record before imposing a prison term. *Id.* at ¶29.

{¶38} In *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, however, the Second District Court of Appeals found sufficient facts in the record when taken together to support the trial court's inference that Castle's trafficking offense involved his participating in organized crime. The trial court made several findings in support of its determination that Castle's offense was one involving organized crime beyond that always inherent in drug trafficking. It relied on:

{¶39} "[T]he amount of marijuana sold; the fact that several other trafficking offenses involving large amounts of drugs were dismissed as part of the plea agreement; * * * the nine firearms that were also seized from his home; Castle's admission to detectives that he had been selling marijuana * * * for several years; his admission that his supplier was a 'biker gang'; and Castle's ability to summon an 'accomplice' to deliver drugs to the confidential informant when he (Castle) was unable to do so himself." *Id.* at ¶18.

{¶40} As Hull contends, there is no direct evidence supporting the sentencing court's determination that Hull's drug trafficking was part of a larger network of individuals manufacturing and distributing illicit drugs. Although the trial court did not identify multiple facts bolstering this finding in Hull's case, it was not unreasonable for the court to infer that Hull's trafficking offenses were inherently a part of organized

9

criminal more so than the normal form of the offense. As the trial court points out, the volume of drugs coupled with the varied extent of the illegal drugs in Hull's possession at the time of his arrest support the reasonable inference that he was acting with one or more individuals in trafficking illegal drugs. Officers found a large quantity of five different types of illegal drugs in his vehicle. Further, Hull confirmed that the drugs were not for personal use and were to be sold. The presentence investigation also confirms that Hull admitted to officers that he was transporting heroin from Ashtabula to Cleveland, and upon being pulled over, police found five different types of drugs, $686 in cash, a digital scale, and numerous plastic baggies in his car. Finally, Hull's cellular phone rang more than 100 times during his police interview.

{¶41} In light of the foregoing, and particularly the large and varied amount of illegal drugs in his possession, we find that the trial court's seriousness finding that Hull's trafficking offense was "a part of an organized criminal activity" was supported by the record.

{¶42} Fourth, Hull challenges the trial court's finding that he was in Lake County with an unusually large quantity of drugs as a seriousness factor. As set forth previously, the trial court emphasized the large quantity of drugs in Hull's possession as a seriousness factor. This finding was supported by the record. The trial court's finding that the amount of drugs in Hull's possession was unusually large for a Lake County drug-related offense is well within the court's bailiwick and is relevant as "any other factor * * * indicating the offender's conduct is more serious than conduct normally constituting the offense* * *."

**{¶43}** Accordingly, Hull's first assigned error lacks merit in its entirety and is overruled.

**{¶44}** He asserts in his second assignment of error that the trial court should have imposed the minimum possible prison terms in light the fact that he was "forced" to enter a plea because of his coerced confession in exchange for promised leniency. Hull argues that his plea was involuntary because his confession was unlawfully induced by a promised benefit, which was later revoked.

**{¶45}** "'"When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."' *State v. Davis*, 4th Dist. Scioto Nos. 13CA3589, 13CA3593, 2014-Ohio-5371, ¶ 31, quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards. *Davis, supra*, citing *State v. Smith*, 4th Dist. Washington No. 12CA11, 2013-Ohio-232, ¶ 10." *State v. Shifflet*, 2015-Ohio-4250, 44 N.E.3d 966, ¶13 (4th Dist.).

**{¶46}** Specifically, Hull claims he confessed to the charges against him as part of an agreement with detectives in exchange for leniency and the possibility of getting probation instead of prison time. Hull avers that he confessed, provided numerous leads and information about other individuals' illegal activities, and agreed to work as a confidential informant in exchange for leniency. However, Hull claims that the officers

11

revoked the deal when they learned that he had a preexisting rape conviction. Thus, Hull did not make a favorable witness and was not a desirable informant.

{¶47} As a result of his "coerced" confession, Hull claims his suppression motion was untimely. The record does not support Hull's claims. Instead, during the three months after Hull was indicted, the state filed its notice of discovery, requested discovery from Hull, and filed a motion to compel Hull's discovery responses. The state likewise subpoenaed two witnesses in September of 2015 indicating that their testimony was required at Hull's trial on October 13, 2015. Hull filed nothing after his indictment except the motion to suppress, which was filed four days before his scheduled jury trial. The trial court denied the motion as untimely, and he subsequently pleaded guilty.

{¶48} Hull now argues that the promised deal was the reason for his untimely motion and plea of guilt. However, the record reflects that either Hull or one of his attorneys failed to pursue the alleged "deal" and that the untimely motion to suppress evidently resulted from their delay. Hull never moved to continue the trial or sought an extension of time to file his suppression motion.

{¶49} The following exchange occurred at Hull's plea hearing:

{¶50} "THE COURT: Before we get started, there was a motion, you filed a motion on Friday, Mr. Ramsey, to suppress evidence. This is after obviously the trial's scheduled for today. The Court was notified that this was going to be a change of plea earlier last week. Then on Friday I come in and after 2:30 this Motion to Suppress was filed. And I know I had indicated that the Court was not going to address that issue as it was untimely filed, I don't know what you intention is with that at this point. * * * how do you want to proceed in that regard?

12

{¶51} "MR. RAMSEY: * * * We did file the motion. We knew the motion was late being filed. There were some other issues, negotiation and misunderstandings and miscommunications that went on with this case from the very outset. When my client was arrested he did speak with the officer * * * who arrested him. And some type of a, I don't want to say a deal, but an arrangement was made where my client might offer some information to the officer, to the drug task force, where my client might be able to help himself. That information was relayed at a pretrial or preliminary hearing out in Willoughby to other counsel. * * * And [the other attorney] neglected to give that information and contact information of the drug task force and my client, and he neglected to hook them up.

{¶52} "* * *

{¶53} "So we all, throughout this process thought that my client would be able to help himself with some information. He did completely confess to everything at the time that he spoke with Officer Mino of the Willoughby Hills Police Department.

{¶54} "So while this was going on, we knew we had a possible suppression issue, Your Honor. We felt we did, but we did not file that motion because we thought my client would be able to help himself with some valuable information about some pretty serious drug traffickers in this area as well as the Cleveland area.

{¶55} "The window was very narrow. The State was not interested in my client. Once we found out the mistake had been made, the State was not interested in my client being able to help himself in getting this information and the window was closed and we found ourselves in a time crunch so we did preserve the record and filed the Motion to Suppress * * *.

13

{¶56} "THE COURT: Well, I mean I know for a fact that my bailiff had been contacting you –

{¶57} "MR. RAMSEY: Yes.

{¶58} "THE COURT: -- at least two weeks prior today, because I have a – so more than two weeks prior to today because I have a rule that we're supposed to be notified two weeks before trial as whether it's going to be a plea or not and when we don't hear anything for a while, Mr. Roberts will contact the different parties to find out what's going on.

{¶59} "* * *

{¶60} "THE COURT: And he kept being told, 'We're working on something. We're working on something.'

{¶61} "* * *

{¶62} "THE COURT: * * * I guess I'm talking about the delay in filing the Motion to Suppress."

{¶63} Thereafter, the trial court confirmed that Hull was aware of and understood all of his constitutional rights. Hull agreed that he understood the rights that he was foregoing and pleaded guilty. Hull confirmed that he had not been threatened or coerced to plead guilty and that there were no promises made by his attorney or anyone else as to what will occur at sentencing inducing him to plead. Hull also agreed that he was entering the guilty plea freely and voluntarily. Notwithstanding, Hull now claims that his plea was not voluntarily entered, but that he had no choice to plea in light of his coerced confession. We disagree.

14

**{¶64}** The exchange between the court and Hull's counsel reveals that Hull was aware of potentially viable suppression issues, but did not timely file a motion to suppress in spite of the opportunity. Moreover, Hull would have learned that his alleged agreement for leniency with the police was a nonstarter had either Hull or his counsel pursued the matter by contacting the drug task force. Had they pursued the agreement, they would have timely learned that Hull was not a desirable informant and filed a suppression motion before the eve of trial. Notwithstanding, Hull did not even attempt to move to continue the trial in order to pursue the merits of his suppression motion.

**{¶65}** Based on the foregoing, Hull knowingly, intelligently, and voluntarily pleaded guilty to two of the ten drug trafficking charges against him.

**{¶66}** "'[A] defendant who * * * voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."'" [*State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927,] ¶78, quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). A defendant who enters a plea of guilty waives the right to appeal all nonjurisdictional issues arising at prior stages of the proceedings. *Ross v. Common Pleas*, 30 Ohio St.2d 323, 324, 285 N.E.2d 25 (1972)." *State v. Muhammad*, 11th Dist. Geauga No. 2014-G-3182, 2014-Ohio-5771, ¶33.

**{¶67}** By entering guilty pleas, Hull waived his right to challenge the constitutionality of his stop, the search of his vehicle, and his confession on appeal. Accordingly, Hull's argument that the trial court should have imposed the lowest possible prison term based on his allegedly illegal and coerced confession lacks merit.

15

{¶68} Based on the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.