[Cite as *State v. John*, 2025-Ohio-2400.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-P-0062 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JOSHUA G. JOHN, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 01399 |

## OPINION AND JUDGMENT ENTRY

Decided: July 7, 2025
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*William C. Livingston*, Berkman, Gordon, Murray & DeVan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Joshua G. John, appeals the judgment of the Portage County Court of Common Pleas sentencing him to an aggregate prison sentence of eight years following his guilty pleas to six counts of Unlawful Sexual Conduct with a Minor, third-degree felonies.

{¶2} Appellant raises three assignments of error, arguing (1) his sentences are contrary to law because the trial court imposed his sentences on counts for which he did not plead guilty and because the sentencing entry imposed sentences outside of his presence; (2) his sentences are contrary to law because the trial court failed to consider

the required statutory factors and considerations; and (3) the record does not support consecutive sentences.

{¶3}    Having reviewed the record and the applicable law, we find Appellant's assignments of error to be without merit.  First, Appellant's sentences are not clearly and convincingly contrary to law based on the trial court's alleged imposition of different sentences at the sentencing hearing and in the entry.  The record demonstrates that the trial court simply misspoke at the hearing in stating the count numbers.  Second, Appellant has not clearly and convincingly established that his sentences are contrary to law based on the trial court's alleged failure to consider the required factors and sentencing considerations.  The record demonstrates that the trial court complied with the applicable law.  Third, Appellant has not clearly and convincingly established that the record does not support the trial court's consecutive-sentence findings.

{¶4}    Therefore, we affirm the judgment of the Portage County Court of Common Pleas.

**Substantive and Procedural History**

{¶5}    On December 21, 2023, the Portage County Grand Jury indicted Appellant on 12 felony counts: five counts of Rape, first-degree felonies in violation of R.C. 2907.02 (Counts 1 through 5); six counts of Unlawful Sexual Conduct with a Minor, third-degree felonies in violation of R.C. 2907.04(A), (B)(1), and (B)(3) (Counts 6 through 11); and one count of Corrupting Another with Drugs, a second-degree felony in violation of R.C. 2925.02.  All of the charged offenses allegedly occurred between October 1, 2023, and December 13, 2023, and involved a minor victim born in December 2008.

{¶6}   On December 26, 2023, Appellant appeared for arraignment, pleaded not guilty, and was appointed counsel.

{¶7}   On August 22, 2024, Appellant executed a Written Plea of Guilty, in which he agreed to plead guilty to Counts 6 through 11, Unlawful Sexual Conduct with a Minor, in exchange for the State's dismissal of the remaining counts.  The parties further agreed that there would be a presentence investigation ("PSI") and a victim impact statement; that Appellant would be required to register as a Tier II Sex Offender; and that the parties were free to argue sentence.

{¶8}   On the same date, the trial court held a plea hearing.  The State presented the following factual basis:

> This case involved an individual, [Appellant], who on the first night in question was involved with another man.  There was an incident that we believe we'd be able to show at trial where [Appellant] had a disagreement with this other individual that led [Appellant] to getting on Grindr, which, for the record, is a social media App that allows men to meet other men to engage in sexual activity.  That night he did come in contact through the Grindr App with the victim in this case who was under the age of 18.  And when we pulled up and went through the record and didn't find the original Grindr profile was on [Appellant's] phone, there's a screenshot of that.  That original post did have a picture of the youth in this case.  The post did say he was 18.  We think the evidence will show that he was clearly not, and that [Appellant] either knew that or was reckless in that regard and that's how we get to where we are.
>
> So on that first night, [Appellant] does reach out to our victim.  The victim comes over.  They engage in sexual activity.  They take meth.  They were taking meth together while at that house.  And then it's alleged that the child comes back two other times that evening.  Over the course of the next five to six weeks, [Appellant] and that young individual engage in sexual activity for what we can prove to be at least six times.  We believe probably to be a few more than that, but that's what we can prove.  That's what the evidence is in that case.
>
> We do have -- we would have at trial evidence of at least two other people to come in and they would be able to describe to the Court, to the jury some circumstances that took place where these individuals questioned the age

Case No. 2024-P-0062

of that child.  They were told by [Appellant] that the child was 18.  I think these two individuals would come and tell the Court and tell the jury we really don't think this kid was 18.  We questioned it and we kind of backed off and didn't do anything with that kid because we questioned his age.

{¶9}  Defense counsel added the following:

I want the bench to be aware that once my client became aware of this victim's age he initiated police contact.  He met the officers.  He sat down with detectives from Ravenna, cooperated one hundred percent.  That's clear in discovery.  Admissions and guidance to the investigation, a lot of that credit goes to [Appellant].

{¶10}  The trial court engaged in a colloquy with Appellant pursuant to Crim.R. 11.  Following the colloquy, Appellant entered guilty pleas to Counts 6 through 11.  The trial court accepted Appellant's guilty pleas, found him guilty, and dismissed the remaining counts of the indictment.  The trial court ordered an expedited PSI and set the matter for sentencing.  The next day, on August 23, 2024, the trial court filed a judgment entry memorializing Appellant's guilty pleas to Counts 6 through 11 and dismissed the remaining counts.

{¶11}  On September 20, 2024, the trial court held a sentencing hearing.  The trial court found Appellant to be a Tier II Sex Offender and notified him of his registration requirements.  Defense counsel requested that Appellant be sentenced to community control sanctions, stating that Appellant took full responsibility for his behavior and apologized to everybody involved.  Defense counsel asserted that Appellant did not groom anybody and was not in a position of authority or power.  Rather, Appellant met the minor victim on an adult dating site and engaged in a consensual relationship with him.  When Appellant discovered the minor victim's actual age, he called the minor victim's family and law enforcement to report that the minor victim was being trafficked through the website.  Defense counsel further asserted that Appellant has no felony

Case No. 2024-P-0062

record and is not a threat to the community and that the situation was a "wake-up call" from which Appellant had learned a "strong lesson."

{¶12} The State disputed some of defense counsel's factual assertions. According to the State, when Appellant and the minor victim met, it was obvious that the minor victim was not 18. Adult men would have testified at trial that the "first time they laid eyes on" the minor victim, they knew he was not 18. In addition, Appellant picked up the minor victim at a parking lot near prominent businesses; therefore, Appellant knew the minor victim was "sneaking out of his parents' house." The State acknowledged that Appellant had called the police; however, one of the detectives would testify that the police were already investigating the matter and that Appellant knew they "were on to him." Rather than breaking the case, Appellant "beat [the police] to the punch and said, hey, I'm here to help you," in an attempt to deceive them and "get out in front of it." According to the State, it would have argued at trial that even if Appellant did not know the minor victim was under the age of consent, Appellant was at least "reckless in that regard."

{¶13} With respect to the minor victim, the State asserted:

The child tells us that at some point he kind of wanted out of this adult world and [Appellant] may have pressured him telling him he loved him and that he would tell his parents about his alternative lifestyle, which this juvenile didn't really want to think his parents knew that he was suffering from gender dysphoria. He didn't know if he wanted to change his sex. He didn't know if he wanted to present as male or female or something in between. And what ends up happening is this -- this network of older men, who are sexually attracted to younger males, took advantage of this kid. And I think that's really what happened. There wasn't a forc[i]ble punching and raping, but it was really mental coercion, telling this child he loved him, taking him into situations that a 14-year-old, you know, he shouldn't be, you know, shouldn't be in a situation in group sex with other men, having it videotaped and then having those items used to mentally coerce him to stay in this relationship.

Case No. 2024-P-0062

. . .

Psychologically, this has had a great effect on this child.  I know he had a lot of issues beforehand.  This has only exacerbated it.

{¶14}  Upon the trial court's inquiry, the State indicated that the minor victim was not present at sentencing because "[h]e's more afraid of appearing here, the embarrassment, the shame."  The State continued:

[T]his child has been harmed.  He is -- he is well on his way probably to a lifetime of having to deal with his own sexuality, the misuse of his youth by these older men, and the harm that that's going to affect him for -- for years to come.  Although he's not here, I know from working with kids for years like this he's going to have problems for a long time, Judge, so we wanted you to get the full picture.

{¶15}  Appellant next addressed the court.  He explained that he had just gotten out of a 14-year relationship and went on an adult website for a "hookup."  He was "not looking for love" and did not ask many questions regarding the person's underlying circumstances.  When Appellant found out the minor victim was underage, he contacted the minor victim's parents and the police.

{¶16}  The trial court sentenced Appellant to 48 months in prison on each of the six counts.  In doing so, the trial court referred to the counts as Counts 1 through 6 instead of as Counts 6 through 11.  The trial court ordered the prison sentence on "Count 2" to run consecutively and the rest to run concurrently, for an aggregate prison sentence of eight years.  The trial court also made consecutive sentence findings and imposed a $300 fine and the costs of the proceedings.

{¶17}  On September 23, 2024, the trial court filed the sentencing entry.  Therein, the trial court stated in relevant part:

The Court considered the purpose of felony sentencing which is to protect the public from future crimes by the Defendant and to punish the Defendant

Case No. 2024-P-0062

using the minimum sanctions that the Court determines to accomplish those purposes without imposing an unnecessary burden on state or local government resources.

The Court also considered the need for incapacitating the Defendant, deterring the defendant and others from future crime, rehabilitating the Defendant, making restitution to the victim of the offense, the public or both.

The Court also considered the evidence presented by counsel, oral statements, any victim impact statements, the Pre-Sentence Report and the defendant's statement.

{¶18} In the sentencing entry, the trial court referred to the counts as Counts 6 through 11.

{¶19} On October 8, 2024, Appellant timely appealed. He raises three assignments of error.

## Standard of Review

{¶20} Appellant's three assignments of error challenge his felony sentences. Appellate review of felony sentences is governed by R.C. 2953.08(G)(2), which provides:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶21}** The "record to be reviewed" on appeal includes (1) "[a]ny presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed"; (2) "the trial record in the case in which the sentence was imposed"; and (3) "[a]ny oral or written statements made to or by the court at the sentencing hearing at which the sentence was imposed." R.C. 2953.08(F)(1)-(3).

**{¶22}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### Dismissed Counts

**{¶23}** Appellant's first assignment of error states: "The trial court's sentence is contrary to law and in violation of Appellant's constitutional and statutory right to be present at all critical stages."

**{¶24}** Appellant argues that his sentences are contrary to law because (1) at the sentencing hearing, the trial court imposed Appellant's sentences on Counts 1 through 6 despite the fact that Appellant pleaded guilty to Counts 6 through 11; and (2) in the sentencing entry, the trial court imposed sentences on Counts 6 through 11 outside of his presence.

**{¶25}** "Contrary to law" means "'in violation of statute or legal regulations at a given time.'" *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* (6th Ed. 1990). This Court and others have found reversible error in certain instances in

Case No. 2024-P-0062

which the trial court's sentencing entry differs from the sentence announced at the sentencing. *See State v. Mitchell*, 2020-Ohio-3417, ¶ 32 (collecting cases). These decisions are based on Crim.R. 43(A)(1), which provides, in relevant part, that "the defendant must be physically present at every stage of the criminal proceeding and trial, including . . . the imposition of sentence . . . ."

{¶26} For instance, in *State v. Vaughn*, 2016-Ohio-3320 (8th Dist.), the trial court sentenced the defendant to an aggregate prison term of 26 years at the sentencing hearing; in its sentencing entry, however, the trial court sentenced the defendant to 45 and one-half years. *Id.* at ¶ 16-17; *see also State v. Jackson*, 2014-Ohio-5008, ¶ 21-23 (1st Dist.). In *State v. Alvelo*, 2017-Ohio-742 (8th Dist.), the trial court did not impose sentences on two charges at the sentencing hearing; in the sentencing entry, however, the trial court imposed prison sentences on those charges. *Id.* at ¶ 16, fn. 2; *see also State v. King*, 2009-Ohio-4551, ¶ 40 (8th Dist.); *State v. West*, 2015-Ohio-2936, ¶ 49-52 (9th Dist.).

{¶27} On the other hand, the Supreme Court of Ohio has held that "[a] court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum." *Schenley v. Kauth*, 160 Ohio St. 109 (1953), paragraph one of the syllabus. This principle is reflected in Crim.R. 32(C), which provides, in relevant part, "[a] judgment of conviction shall set forth the fact of conviction and the sentence," and "[a] judgment is effective only when entered on the journal by the clerk." Accordingly, the trial court's sentencing entry, not its oral pronouncement of sentence at the sentencing hearing, is the effective instrument for sentencing a defendant. *State v. Roscoe*, 2015-Ohio-3876, ¶ 7 (8th Dist.). If the sentencing entry and the trial judge's

comments conflict, the sentencing entry controls. *State v. Russell*, 2020-Ohio-3243, ¶ 59 (11th Dist.). Consequently, "verbal miscues or misstatements in open court during sentencing are harmless." *State v. Swiergosz*, 2012-Ohio-830, ¶ 49 (6th Dist.). *Accord State v. Eitzman*, 2022-Ohio-574, ¶ 31 (3d Dist.). *See State v. O'Neal*, 2012-Ohio-5564, ¶ 13 (9th Dist.) ("To the extent that [appellant] has identified a misstatement by the judge at the sentencing hearing, any error is harmless as it did not impact the length of his sentence.").

**{¶28}** Here, the sentencing entry states that Appellant was sentenced on Counts 6 through 11. Although the trial court referenced Counts 1 through 6 at the sentencing hearing, the record demonstrates that the court simply misspoke. In particular, there is no dispute that during the August 22, 2024 plea hearing, Appellant pleaded guilty to Counts 6 through 11, Unlawful Sexual Conduct with a Minor, third-degree felonies. In its August 23, 2024 judgment entry, the trial court memorialized Appellant's guilty pleas to those counts and dismissed the remaining counts. Therefore, Counts 1 through 5 (and Count 12) were no longer pending at the time of the sentencing hearing on September 20, 2024.

**{¶29}** Further, at the start of the sentencing hearing, the trial court accurately stated that "[t]he Defendant pled guilty to Six Counts of Unlawful Sexual Conduct with a Minor, all Felonies of the Third Degree, which may bring with them up to 60 months in prison on each count, up to a $10,000.00 fine and court costs on each count, and a Tier II Sex Offender Registration as part of the negotiations." Appellant's individual sentences of 48 months in prison and a $300 fine are within the statutory range for third-degree felonies. *See* R.C. 2929.14(A)(3)(a) (authorizing a definite prison term of 12, 18,

Case No. 2024-P-0062

24, 30, 36, 42, 48, 54, or 60 months); R.C. 2929.18(A)(3)(c) (authorizing a fine of not more than $10,000). Counts 1 through 5, by contrast, were first-degree felonies that would have required the imposition of indefinite prison terms. *See* R.C. 2907.02(B) and 2929.14(A)(1)(a). Appellant also did not object during the sentencing hearing, which suggests there was no confusion.

**{¶30}** In effect, the trial court renumbered the counts in the indictment to exclude the dismissed counts and include only the pending counts. This is a common occurrence when a case is tried to a jury. *See, e.g., State v. Sands*, 2020-Ohio-5472, ¶ 12 (11th Dist.) (finding no error where "[t]he trial court merely renumbered the counts in the indictment for the ease of consideration by the jury"). Obviously, a court should inform the parties when doing so to avoid confusion and potential error. However, the trial court's failure to do so in this instance did not render Appellant's sentences contrary to law, much less clearly and convincingly so.

**{¶31}** In sum, Appellant's sentences are not clearly and convincingly contrary to law. Accordingly, Appellant's first assignment of error is without merit.

**Sentencing Factors and Considerations**

**{¶32}** Appellant's second assignment of error states: "Appellant's sentences are contrary to law because the trial court failed to consider the required factors and considerations required by law."

**{¶33}** R.C. 2929.11(A) states that "[a] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing," which are "[1] to protect the public from future crime by the offender and others, [2] to punish the offender, and [3] to promote the effective rehabilitation of the offender using the minimum

sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." "To achieve those purposes, the sentencing court shall consider the need for [1] incapacitating the offender, [2] deterring the offender and others from future crime, [3] rehabilitating the offender, and [4] making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A).

{¶34} R.C. 2929.12(A) grants the sentencing court "discretion to determine the most effective way to comply with the purposes and principles of sentencing." "In exercising that discretion, the court shall consider" the seriousness factors in R.C. 2929.12(B) and (C) and the recidivism factors in R.C. 2929.12(D) and (E). *Id.* These statutory sections provide a nonexclusive list for the court to consider. *Id.*

{¶35} Appellant argues that his sentences are contrary to law because the trial court failed to consider the purposes and principles of felony sentencing in R.C. 2929.11(A) and the seriousness and recidivism factors in R.C. 2929.12. In support, he asserts that the trial court never mentioned or discussed those statutes at the sentencing hearing.

{¶36} As stated, R.C. 2929.11(A) requires the trial court to "be guided by" the three purposes of felony sentencing; it does not require the court to "consider" them. *State v. Anthony*, 2019-Ohio-5410, ¶ 77 (11th Dist.).

{¶37} While R.C. 2929.11(A) requires the trial court to "consider" the four principles of felony sentencing, the trial court satisfies its obligation by stating that it considered them. *State v. Dawson*, 2016-Ohio-2800, ¶ 15 (11th Dist.). The inclusion of language in a sentencing entry affirmatively stating that the court considered the principles of felony sentencing defeats a claim that the trial court failed to consider them.

*Anthony* at ¶ 77. Here, the trial court's sentencing entry recites all four principles and states that the court considered them.

**{¶38}** With respect to R.C. 2929.12, a sentencing court does not have to use specific language and render precise findings to satisfactorily consider the relevant seriousness and recidivism factors. *State v. Hull*, 2017-Ohio-157, ¶ 18 (11th Dist.). Instead, the defendant must affirmatively show that the court did not consider the applicable sentencing criteria. *Id.* "Absent evidence to the contrary, a reviewing court will presume the trial court considered all appropriate sentencing factors, even if the record is silent." *Dawson* at ¶ 15. Here, while the trial court did not reference or discuss R.C. 2929.12, that alone does not affirmatively show the court failed to consider the applicable factors.

**{¶39}** In sum, Appellant has not clearly and convincingly established that his sentences are contrary to law. Accordingly, Appellant's second assignment of error is without merit.

### Consecutive Sentences

**{¶40}** Appellant's third assignment of error states: "The trial court erred in imposing consecutive sentences."

**{¶41}** Appellant argues that the record does not support the trial court's imposition of consecutive sentences.

**{¶42}** "Ohio law presumes that a defendant convicted of multiple crimes will serve his sentences concurrently." *State v. Glover*, 2024-Ohio-5195, ¶ 38; R.C. 2929.41(A). "A court may impose consecutive sentences only when some law specifically permits it to do so," and "R.C. 2929.14(C)(4) is one such law." *Glover* at ¶ 38. "Under R.C.

Case No. 2024-P-0062

2929.14(C), a court must engage in a three-step analysis before it may impose consecutive sentences." *Id.* "First, it must find that consecutive sentences are 'necessary to protect the public from future crime or to punish the offender.'" *Id.*, quoting R.C. 2929.14(C)(4). "Second, the court must find that 'consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.'" *Id.*, quoting R.C. 2929.14(C)(4). "Finally, the court must find 'any of the following':

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*, quoting R.C. 2929.14(C)(4).

**{¶43}** Here, the trial court found subsection (b) to be applicable.

**{¶44}** The Supreme Court of Ohio has explained that "[t]he statute does not permit an appellate court to simply substitute its view of an appropriate sentence for that of the trial court. An appellate court's inquiry is limited to a review of the trial court's R.C. 2929.14(C) findings." *Id.* at ¶ 44. The appellate court "must examine the evidence in the record that supports the trial court's findings," and "it may modify or vacate the sentence only if it 'clearly and convincingly' finds that the evidence does not support the trial court's R.C. 2929.14(C)(4) findings." *Id.* at ¶ 45, quoting R.C. 2953.08(G)(2)(a).

{¶45} Appellant challenges all three of the trial court's consecutive-sentence findings. With respect to the first and second findings, Appellant argues that "consecutive service is not necessary to protect the public from future crime or to punish" him and that "consecutive sentences are disproportionate to the seriousness of" his conduct and "the danger he poses to the public." According to Appellant, the record demonstrates (1) he is a first-time felony offender; (2) he reported what happened to the police and to the minor victim's parents; (3) he did not seek out minors but met the minor victim through a social media app that requires users to verify that they are at least age 18; and (4) he will be required to register as a Tier II Sex Offender for 25 years.

{¶46} Appellant's factual assertions, while largely accurate, are incomplete. The PSI shows that Appellant has a minor criminal record that includes felony *charges*, although not felony *convictions*.

{¶47} In addition, while it appears Appellant contacted the police and the minor victim's parents, the parties disagree about Appellant's motives for doing so. Appellant claims he was not initially aware that the minor victim was underage. When he discovered that fact, he sought help for the minor victim. The State, by contrast, claims Appellant knew or should have known that the minor victim was under 18 and was sneaking out of his parents' house. In addition, the police claim that Appellant was aware they were investigating him and the underlying matter at the time he contacted them.

{¶48} Further, the fact that Appellant is required to register as a Tier II Sex Offender is actually indicative of his danger to the public. The express purpose of Ohio's sex-offender registration system is "to protect the safety and general welfare of the people of this state" and to "assur[e] public protection." R.C. 2950.02(B). *See State v.*

*Blankenship*, 2015-Ohio-4624, ¶ 37 ("The stated legislative intent of the General Assembly in enacting S.B. 10 is to protect the public"). The General Assembly found that "[s]ex offenders . . . pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment, a prison term, or other confinement or detention . . . ." R.C. 2950.02(A)(2).

{¶49} With respect to the trial court's third consecutive-sentence finding, Appellant argues "there is no evidence that the harm caused in this case was so great or unusual to warrant consecutive sentences." Appellant asserts that his offenses did not involve physical harm; rather, he acted recklessly regarding the minor victim's age after meeting him on a social media app that required age verification. Appellant also asserts that the minor victim did not testify at the sentencing hearing and did not submit a victim impact statement.

{¶50} Appellant's factual assertions are again incomplete. Appellant is correct that his offenses did not involve physical harm; however, the State argued that Appellant engaged in mental coercion that caused psychological harm to the minor victim. According to the State, Appellant took advantage of the minor victim's difficult situation and threatened to expose his sexuality and illicit activities.

{¶51} In addition, the State argued that Appellant was *at least* reckless with respect to the minor victim's age. Being reckless does not mean Appellant was duped. "A person is reckless with respect to circumstances when, with *heedless indifference to the consequences*, the person *disregards* a substantial and unjustifiable risk that such circumstances are likely to exist." (Emphasis added.) R.C. 2901.22(C).

{¶52} Further, Appellant is correct that the minor victim did not testify at the sentencing hearing. According to the State, however, this is because of fear, embarrassment, and shame, all of which support a finding of great or unusual harm. *See State v. Gessel*, 2021-Ohio-1842, ¶ 11 (6th Dist.).

{¶53} Finally, it is not clear from the record whether the minor victim submitted an impact statement. Appellant's Written Plea of Guilty references a "VSI"; however, there was no reference to a victim impact statement during sentencing. The State asserted the existence of serious psychological harm to the minor victim and described it. While these assertions were not presented in the form of testimony or exhibits, the record on appeal includes "[a]ny oral . . . statements made to . . . the court at the sentencing hearing . . . ." R.C. 2953.08(F)(3). This Court has observed that sentencing hearings are governed by simple notions of due process in which evidence is properly considered when the defendant is afforded an opportunity to respond. *State v. Edder*, 2017-Ohio-5649, ¶ 21 (11th Dist.). Since Appellant elected to plead guilty, there is little in the record that resembles the type of evidence that the parties would have presented to a jury. Notably, Appellant relies on oral statements to support his arguments on appeal.

{¶54} The record on appeal also includes "[a]ny presentence . . . investigative report that was submitted to the court in writing before the sentence was imposed." R.C. 2953.08(F)(1). The PSI in this case includes statements that the minor victim purportedly made to the police, and they are consistent with the State's assertions at the sentencing hearing.

Case No. 2024-P-0062

{¶55} Based on the foregoing, Appellant has not clearly and convincingly established that the record does not support the trial court's consecutive-sentence findings.  Accordingly, Appellant's third assignment of error is without merit.

{¶56} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-P-0062

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against Appellant.

JUDGE JOHN J. EKLUND

JUDGE EUGENE A. LUCCI,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.